JUDGE LINDSAY
delivered the opinion oe the court.
Montgomery Parker stood indicted in the Fayette Circuit Court'for the murder of John Wills. He made application therefor and succeeded in having the venue changed to the Woodford Circuit Court. When his case was reached for trial *193 in the last-named court the indictment was quashed. The charge was thereupon laid before the grand jury of Woodford County. That body returned an indictment against him charging the same murder, but alleging that it was committed in Woodford County. The accused was at once put upon trial, and was found guilty of manslaughter, and adjudged to be confined in the penitentiary for the term of three years. He has appealed to this court, and the validity and regularity of the proceedings in the court below are now before us for review.
The jurisdiction and power of the grand jury of Woodford County to find and return the indictment is denied, because of the admitted fact that the killing was done in the county of Fayette.
Article 4, chapter 12 of the General Statutes authorizes a change of the venue in a criminal or penal case, when the defendant shall apply for the change and shall make it appear that he can not have a fair trial in the county where the proceeding is pending. Section 7 of that article provides that “the court to which the removal is so made shall have the same jurisdiction to dispose of the case as the court had from which it was removed; and if the indictment be quashed or a nolle prosequi entered, a new indictment may be found from time to time by a grand jury of the county to which the removal is made, and the same prosecuted until the case is finally disposed of, as though the offense had been committed in that county.”
This statute is conclusive of this question if it is not in conflict with certain constitutional provisions embodied in the Bill of Bights. Appellant insists that it is violative.of “the ancient mode of trial by jury,” and that it provides for depriving a citizen of life, liberty, or property in a mode unknown to “the law of the land.”
“ The law of the land,” as contemplated by the 12th sec *194 tion of the Bill of Bights, and which was in force when the people of Virginia threw off their allegiance to the British crown, and when the first constitution of Kentucky was adopted, authorized a person charged with crime to have a change of the venue, and provided in such a case that he should be tried by other than a jury of the vicinage; and appellant’s counsel do not question the validity of the statute to the extent that it requires the trial jury to be made up of competent jurors residing within the body of "Woodford County; but they do contend that “the law of the land” and “the ancient mode of trial by jury” secure to the accused the absolute right to demand that he shall not be held to answer a criminal charge except upon a presentment found or an indictment returned by a grand jury of the county in which the offense is alleged to have been committed.
This is undoubtedly a correct statement of the ancient doctrine in its general application. But there were always some exceptions to it growing out of real or supposed necessity.
By the statute of 2d & 3d Edward VI, chapter 24, section 2, it was provided “that when any person or persons hereafter shall be feloniously stricken or poisoned in one county and die of the same stroke or poisoning in another county, that then an indictment thereof founden by jurors of the' county where the death shall happen, etc., shall be good and effective in law as if the stroke or poisoning had been committed and done in the county where the party shall die or where such indictment shall be found.”
This was a substantial exception to the general rule, and this "conclusion can not be successfully combated by assuming that in the cases provided for by the statute the offenses would, in estimation of law, be committed partly in each of the two counties. It is the giving of the blows or the administration of the poison that constitutes the felony, and the dying within .a year and a day merely determines the grade of the crime. *195 To support the statute upon the ground that the murder was commenced in the one and completed in the other county is to ignore the reason for guaranteeing to the accused the right to be tried by a jury of the vicinage.
In commenting upon the clause in the Federal Constitution securing this right, Judge Story says: “The object of this clause is to secure the party accused from being dragged to a trial in some distant state, away from his friends and witnesses and neighborhood, and thus to be subjected to the verdict of mere strangers, who may feel no common sympathy, or who may even cherish animosities or prejudices against him. Besides this, a trial in a distant state or territory might subject the party to the most oppressive expenses, or perhaps even to the inability of procuring the proper witnesses to establish his innocence.” (Story on Constitution, vol. 2, sec. 1781.)
These reasons apply with full force to a case in which the person stricken or poisoned shall die in a distant county, among strangers to the accused, who can feel but little sympathy for, and may cherish animosities and prejudices against him.
"We conceive that the most probable reason for the enactment of the statute was that the necessity resting upon the prosecution to prove the death was deemed a sufficient consideration to justify an exception being made in favor of the convenience of the witnesses, whose presence would be indispensably necessary to establish the guilt of the person charged with the crime.
The legislature of this state seems at no time to have doubted its power to create similar exceptions. By the act of January 27th, 1808 (2d Stat. Laws, 885), it was enacted that where any part of a river, water, water-course, highway, road, or street should be the boundary line between two counties, the courts of such counties should have concurrent jurisdiction in all cases over the whole extent of such parts of such river, etc., as if they were within the body of the *196 circuit or county. The same power is reasserted in the 17th and 18th sections of the Criminal Code of Practice, in the 28th chapter of the Revised Statutes, and in sections 6 and 7 of article 1, and section 1 of article 2, chapter 29 of the General Statutes.
The provision of the General Statutes, which was taken from the Revised Statutes, to the effect that “where it is a matter of doubt, in the opinion of the court, in which of two or more counties the offense was committed, the court of either in which the indictment is found shall have jurisdiction of the offense,” must be maintained, if at all, upon the ground that it is essential to secure the enforcement of the criminal and penal laws.
We are satisfied that when public necessity imperiously requires exceptions of this character the legislature may constitutionally create them. The legislative power in this respect, when carried .very much further than this, has been upheld by the courts of Missouri, New York, and Iowa. (10 Mo. 503; 3 Hill, 309; 3 Selden, 295; 2 Greene, 286.) We are free to say, however, that we are not now prepared to give our full assent to the doctrine of these cases.
We conclude that the right of the accused to demand that he shall be indicted by the grand jury of the county in which the criminal or penal act is alleged to have been committed is not, like the right to be tried by a petit jury, an absolute and indefeasible right which can not be waived or surrendered. We regard it as of the-same nature with the right to demand a verdict after the prisoner has been arraigned and delivered to the trial jury.
Not being perfect, absolute, and indefeasible, these rights may be subordinated to imperious public necessity, and may be waived by the prisoner when, in his opinion, it is to his interest to waive them.
In this case the appellant did waive the right under dis *197 cussion. It was upon his motion that the venue was changed, and upon his motion that the indictment returned by the grand jury of Fayette County was quashed. By making these motions he not only waived the right to resist a trial until re-indicted in the Fayette Circuit Court, but in effect consented that the charge against him should be laid before and acted upon by the grand jury of Woodford .County.
The jurisdiction of the offense having been conferred upon the Woodford Circuit Court by the change of venue, the oath of the grand jurors was sufficiently comprehensive to embrace this case.
But to authorize the conviction of the appellant it was essential that the indictment should state truly the county in which the offense was committed. (Section 123, Criminal Code of Practice.)
In this regard the indictment must be direct and certain, not only for the purpose of showing jurisdiction in the court, but to so describe and identify the offense that a verdict and judgment founded upon it may be available as a plea in bar to a subsequent prosecution, and it is further necessary in order to apprise the defendant of the particular accusation on which he is to be tried. (1 Duvall, 90; 3 Met. 5; 18 B. Mon. 493.)
It being requisite that the indictment shall state the county in which the offense was committed, it follows necessarily, under the rule that the allegata and probata must correspond, that the proof must sustain affirmatively this material allegation. (Bishop on Crim. Procedure, sec. 107.)
In this case it was agreed that the place of the killing was in the county of Fayette. Yet the instructions of the court authorized the jury to convict under the indictment charging the offense to have been committed in the county of Woodford. For the error in this regard, in giving and refusing instructions, the judgment is reversed. The cause is remanded for further proper proceedings not inconsistent with this opinion.