Carrington v. The Commonwealth.

---

CASE 18—INDICTMENT—September 26.

# Carrington v. The Commonwealth.

78 " 83
j 106 917

### APPEAL FROM CRITTENDEN CIRCUIT COURT.

1. After having been indicted in the Circuit Court, appellant, who was never in jail, procured the Quarterly Court to try him. The act of 18th of March, 1876, was never intended to authorize such a state of case.
2. The Circuit Court did not err in instructing the jury that such a trial, if procured by the appellant while he was not in jail, was void.
3. There must be a separate prescription for each sale by a druggist of ardent spirits.

MARBLE & SON AND S. HODGE FOR APPELLANT.

1. The physician is the judge as to whether a party should have whisky as a medicine or not.
2. The custody of appellant by the jailer is equivalent to his being in jail. The act of 1876 was intended to meet cases of this description.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

1. The act of 1876 was only intended to apply to cases where the party was actually in jail.
2. The appellant was not in jail. The fact that the jailer claimed to be in custody of him amounts to nothing.

Carrington v. The Commonwealth.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

"Whenever any person shall be *lodged in jail*, in default of bail, charged with a misdemeanor, or whether *committed to jail* under an indictment or by the order of an examining court, it shall be the duty of the jailer to notify the judge of the quarterly court and the county attorney of the fact, if the court in which the prisoner is indicted or is ordered to appear is not in session." (Sec. 1, act 18th March, 1876, Bullitt & Feland's Statutes, 897.) The subsequent sections provide for a trial before the county judge in such cases as are indicated in section 1.

The evidence in this case shows that the prisoner never was committed to jail, nor was he in good faith committed to the custody of the jailer. Whatever was done toward bringing the case within the letter of the statute, was evidently done, not to avoid the imprisonment of the defendant, but to secure a trial before the county judge.

This was a perversion of the statute. The statute was not enacted for the mere purpose of giving the accused an opportunity to choose between a trial before the county judge and a trial in the Circuit or Criminal Court. The principal purpose was to protect the public against the cost of keeping him in prison until the Circuit or Criminal Court would sit, and, in order to give the Quarterly Court judge jurisdiction, the accused must be committed to the jail or to the jailer in good faith, and not merely in pursuance to a mere device and contrivance to give the Quarterly Court jurisdiction.

The evidence in this case shows conclusively that the surrender of the prisoner to the jailer was merely formal, and merely with the design to give the quarterly judge jurisdiction, and not for the safe-keeping of the prisoner, or because

he was either unable to give bail or unwilling to do so, except for the purpose of bringing his case within the statute. He was never, in good faith, in the custody of the jailer. No control was taken of him, but he was permitted to return to his place of business, and to remain there as free from the custody and control of the jailer as if he had never been arrested, and was at his place of business when the Court convened and directed the jailer to bring him into court.

The Circuit Court properly refused to permit its jurisdiction to be ousted, and to allow the prisoner, by a device so transparent, to choose the tribunal in which he would be tried. A judgment of acquittal thus procured was not a bar, and was properly disregarded.

It is to be treated as if the prisoner had procured himself to be accused, arrested, and tried, and then attempted to plead the judgment thus obtained in bar; for although he had been regularly indicted, he procured a trial in the Quarterly Court by a fraud upon the statute giving that Court jurisdiction.

The indictment charged a violation of the "local option law."

The prisoner, who is a druggist, offered in evidence the following writing as the prescription of a physician, and relied upon it as authorizing the sale of liquor:

"E. L. CARRINGTON,

"DRUGGIST AND APOTHECARY,

"Marion, Kentucky.

"R ·                              JANUARY 5, 1878.

"Let J. C. Cook have one pint *spts. frumenti* every week for six months.

"Signed,        C. M. CASH, M. D."

Numerous sales were made under this prescription, but not *more* than one pint a week during six months from its

date, and the question arises whether such a prescription authorized the sale of more than one pint of "*spirits frumenti.*"

The statute provides that it shall not apply "to druggists who sell for medical purposes, on a prescription made and signed by a regular practicing physician."

When this language is considered in the light of the context, we entertain no doubt that it is necessary to have a separate prescription for each sale, and the Court did not err in so ruling.

Wherefore the judgment is affirmed.