Commonwealth v. Jones (Judge.)

———

Case 119—Petition by the Commonwealth by J. M. Huffaker, Commonwealth's Attorney, 30th Judicial District against S. E. Jones, Judge of the Tenth Judicial District, for a Writ of Prohibition.—November 1.

## Commonwealth v. Jones (Judge.)

Petition Filed in Court of Appeals.   Writ Denied.

Homicide—Jurisdiction—Concurrent Jurisdiction—Assumption of Jurisdiction—Effect—Criminal Law—Powers of Examining Magistrate—Change of Charge—Prohibition.

1. Under Const., sec. 110, giving the court of appeals power to issue such writs as may be necessary to give it general control of courts of inferior jurisdiction, such court will issue a writ of prohibition to prevent the unauthorized exercise of jurisdiction by an inferior court.
2. Ky. St. 1903, sec. 1147, providing that if a mortal wound or other injury be inflicted in one county, and death ensue in another the offense may be prosecuted in either, and Cr. Code Prac., sec. 24, providing that, if the jurisdiction of an offense is in two or more

counties, defendant shall be tried in the county in which he is first arrested, unless an indictment for the offense be pending in another county, are not violative of sec. 11 of the Bill of Rights of the State Constitution, which guaranties to every one accused of crime a trial by a jury of the vicinage.

:3. Ky. St. 1903, sec. 1147, provides that if a mortal wound be inflicted in one county, and death ensue in another the offense may be prosecuted in either. Cr. Code Prac., sec. 24, provides that, when the jurisdiction of an offense is in two or more counties, defendant shall be tried in the county in which he is first arrested, unless an indictment for the offense be pending in another county. HELD, that where a shot was fired, and a mortal wound inflicted in one county, but deceased died in another county, and the person committing the deed was arrested in the county where the shot was fired, and was indicted in that county, the circuit court of that county thereby obtained exclusive jurisdiction to try the offense.

·4. Where the examining court has a prisoner in custody, it may change the charge upon which he was arrested so as to fit the facts of the case at any time pending the inquiry.

·5. Under Cr. Code Prac., secs. 66, 99, requiring the bail of a prisoner to have him present at the time appointed by the committing magistrate, and at all times pending the inquiry, to answer not only the charge upon which he has been presented, but any charge connected with or growing out of it, of which in the judg- ment of the court, the prisoner is guilty, a prisoner is in the custody of the court in such a sense as to permit it to change the charge upon which he was arrested, although he is out on bail,

HOWARD B. LEE, FAIRLEIGH. STRAUS & FAIRLEIGH and WIL- LIAM CARROLL, COUNSEL FOR JOHN R. T. BARBOUR.

## SUMMARY.

1. Barbour having been arrested first in Bullitt county, charged with maliciously shooting and wounding Hagan and there admitted to bail by the judge of the county court, sitting as an examining court, was thereafter and thereby actually in the cus- tody of his bondsman, "his chosen jailer" and constructively in the custody of that court, and so held to answer any public offense of which he might reasonably be believed guilty, and, while so held was not legally liable to arrest in Jefferson county on charge of the commission of said "felony or offense" or of any grade thereof.

2. In cases where two or more courts have jurisdiction of the

Commonwealth v. Jones (Judge.)

same controversy, and no step of any kind has been taken in either jurisdiction, the jurisdiction of all the courts is potential and not actual. The moment a proceeding is begun in any of the courts having potential jurisdiction, actual jurisdiction at once arises in the court where the proceeding is begun, and thenceforth all potential jurisdiction in the other courts is destroyed, and actual jurisdiction resides in the court where the proceeding is first begun to the exclusion of all other courts.

3. The rule is universal, that where one of two courts having concurrent jurisdiction acquires actual jurisdiction by the beginning of proceedings, or takes possession of property which is the subject of litigation, the other court can not interfere with the first acquired actual jurisdiction.

This rule is applicable as well to criminal prosecutions as to civil suits, and there is no possible distinction to be made between the one and the other.

AARON KOHN, LORAINE MIX, OF COUNSEL FOR PLAINTIFF.

1. If the contention of the learned counsel for Barbour is correct, then there never can be any question upon which the statute, sec. 1147, and sec. 21, of the Code can apply in a case of homicide. Of the offense of malicious shooting and wounding by Barbour, Bullitt county had at the time of the arrest, exclusive jurisdiction; if Hagan had not died, the jurisdiction would have been in Bullitt, and no question could ever have arisen as to its jurisdiction. It was not until the death of Hagan that the charge of murder could be made, and it was not until then that Barbour could be arrested, charged with that offense; and not until then that the statutes referred to could have any application.

OPINION OF THE COURT BY JUDGE O'REAR—DENYING WRIT.

J. M. Huffaker, Commonwealth attorney for the Thirtieth Judicial District of Kentucky (which is comprised of Jefferson county), has filed a petition in this court against Hon. S. E. Jones, judge of the Tenth Judicial District (in which is situated Bullitt county), praying that a writ of prohibition issue out of this court against the respondent to prevent his taking jurisdiction of the person of one John R. T. Barbour for trial under a charge of murder, said to have

been committed upon F. J. Hagan on or about the 12th day of August, 1904. The facts of the homicide are alleged to be that Barbour shot and mortally wounded Hagan in Bullitt county on August 11, 1904, but that Hagan survived until August 12th, when he died from the effects of the wound; that Hagan, after the wound was inflicted, was taken to Louisville, in Jefferson county, for treatment at a hospital situated there, and died, as aforesaid, while in Jefferson county. Barbour was arrested in Bullitt county on the 11th of August, 1904, upon a warrant issued by the county judge of Bullitt county, charging him with the felony of malicious shooting and wounding with intent to kill—the shooting and wounding above alluded to.

He was presented before the county judge of Bullitt sitting as an examining court, when he was released upon bail for his reappearance at a later day to answer the charge. Immediately after the death of Hagan, Barbour, who had gone to Louisville, where he had been in business, was arrested in Louisville, charged with the crime of murder, the result of the shooting and wounding recited, and was committed without bail by the police court of Louisville, sitting as an examining court, to answer the charge before the Jefferson circuit court. The Jefferson circuit court has not indicted Barbour for the crime, but the Bullitt circuit court has, and the judge of the Jefferson court, criminal division, has upon the hearing of an application for habeas corpus ordered Barbour remanded to Bullitt county for trial.

The complainant claims that the Jefferson circuit court has the exclusive jurisdiction to try Barbour under the charge of murder. If the Jefferson circuit court has jurisdiction of the offense, and has assumed it, the circuit court of Bullitt county would be without jurisdiction to take and try the defendant upon that charge. The writ of prohibition

Commonwealth v. Jones (Judge.)

will issue from this court to prevent the unauthorized exercise of jurisdiction by an inferior court. Const., sec. 110; Weaver v. Toney, 107 Ky., 419, 21 R., 1157, 54 S. W., 732, 50 L. R. A., 105; Louisville & N. R. R. Co. v. Miller, Judge, 112 Ky., 464, 66 S. W., 5, 23 Ky. Law Rep., 1714. The question of jurisdiction of the Bullitt circuit court in the case is the one presented for decision.

At the common law it seems to have been doubtful where the jurisdiction was to try the offense where the stroke or poison was administered in one county and the death resulted in another. To obviate that difficulty, the statute of 2 & 3 Edward VI was passed, which reads as follows: "That when any person shall be feloniously stricken or poisoned in one county and die of the same stroke or poisoning in another county, an indictment therefor found by jurors of the county where the death happened shall be as good and effectual in law as if the stroke or poisoning had been done or committed in the same county where the party shall die, or such instrument shall be so found." After that statute it was settled that the trial was in the county where the death happened. East, 382. As the common law of England and the acts of Parliament made in aid of the common law prior to the fourth year of King James I, which were of a general nature, were by the first Constitution of Kentucky continued in force in this State, and have been since continued in force by the several revisions of the statute law of this State except in so far as modified by our statutes (Parker v. Commonwealth, 12 Bush, 191; Ray v. Sweeney, 14 Bush, 1, 29 Am. Rep., 388), it is argued that the trial must now be in the county where the death happened; that until the death the deed is incomplete.

Although there is eminent authority for the proposition that, where the blow was struck in one county and the death

results in another, the offense was punishable as murder in either, we have not found it necessary to carry the inquiry so far as to pass upon that phase of the question. By our statute (section 1147, Kentucky Statutes, 1903) it is provided: "If a mortal wound or other violence or injury be inflicted in one county and death ensue in another, the offense may be prosecuted in either." Section 24, Criminal Code of Practice, reads: "If the jurisdiction of an offense be in two or more counties, the defendant shall be tried in the county in which he is first arrested, unless an indictment for the offense be pending in another county." Counsel appearing for Barbour, but who brief the case on behalf of respondent, claim that the act giving jurisdiction to either county to try the offense is violative of the constitutional provision guarantying to every one accused of crime a speedy public trial by a jury of the vicinage. Section 11, Bill of Rights, Const. Complainant takes the contrary position. He also urges that section 24, Criminal Code of Practice, can not apply, though, because, he says, the accused was first arrested under the charge of murder in Jefferson county, when there was no indictment for the same offense pending in Bullitt; that, although accused had been arrested in Bullitt upon the charge of the malicious shooting and wounding which subsequently resulted in the death of Hagan, yet that offense was merged into the crime of murder by the death of the person shot, and the prosecution under it was at an end.

Of the first proposition, the matter turns upon the meaning of the term, "jury of the vicinage." Literally it signifies of the neighborhood where the crime was committed. The purpose of the requirement is to insure a person charged with crime against being transported to a distant locality for trial, where he can not have the benefit of the presence

Commonwealth v. Jones (Judge.)

of his witnesses, and of having their statements weighed by jurors acquainted with them. Poverty or other circumstances would frequently prevent those accused falsely from presenting their defense. Oppression and injustice would be possible, and likely enough frequent. A crime may be a single act, and immediate in all its consequences. The locality where it was enacted is its vicinage. On the other hand, a crime may be the result of a series of acts or the result of a single act. The direct consequences may be made to occur at various times and in different localities. The criminal act, the motive of the perpetrator, the cause, and the effect are but parts of the complete transaction. Wherever any part is done becomes a locality of the crime as much as where it may have culminated. The contrary notion was the basis of the confusion that led to the enactment of the statute 2 & 3 Edward VI, supra. Ever since that statute—and it seems probable that even before its passage—the vicinage of a crime begun in one county and finished in another, or where the cause occurred in one county and result in another, has been deemed to be either county. A jury summoned from either place was at the common law "a jury of the vicinage." The perpetrator of an unlawful deed is presumed to have intended the natural and actual consequence of this act; so that when his victim does not immediately die, and goes on about his affairs, the injury and its cause accompany him. It should not lie in the mouth of one committing a felonious assault to claim immunity from the extreme consequence of his deed because the person stricken has gone to another county before he succumbs to his wound. It was, therefore, competent for the Legislature to provide that, where a crime is committed in part in one county and part in another, it may be punished in either. We hold that section 1147, Kentucky Statutes,

supra, and section 24, Criminal Code of Practice, are not
violative of section 11 of the Bill of Rights of the Constitu-
tion of Kentucky.

Where jurisdiction is concurrent in two or more courts,
it is plain that both can not at the same time exercise it,
and, if one takes jurisdiction of a particular offense, that
another can never do so. The personal presence of the ac-
cused at his trial in cases of felony is indispensable under
the Constitution. It is equally true that when once in
jeopardy the accused can not again be tried for the same
offense. These constitutional provisions, aside from the fa-
miliar rules of procedure by courts having concurrent juris-
diction   of   offenses,   point   to   the   conclusion   that
where   one   court   has   assumed   jurisdiction   it
becomes exclusive. It is concurrent only so long as
neither has begun to exercise it. Section 24, Criminal Code
of Practice, merely defines what would probably have been
the judicial course in its absence, which is that, if neither
court has gone so far as to find an indictment, thereby tak-
ing jurisdiction of the offense, then any other court in which
it may be tried originally can, by taking the accused into
custody, affix its jurisdiction as the exclusive one in the
matter.   In the case at bar jurisdiction to try the accused was,
by statute, as above indicated, concurrent in the two counties
where the crime was committed—the one in which the shot
was fired, and the one in which the death resulted. The au-
thorities of the county where the shot was fired first arrest-
ed Barbour. So far as he was concerned, the deed was done.
It merely depended upon later developments to determine
the degree of his crime, if guilty. Having him in custody, it
was competent for the examining court of Bullitt county
to have changed the charge upon which he was arrested so
as to fit the facts of the case at any time pending the in-

quiry. The prisoner was no less in the custody of the court because he was out upon bail. His bail was his jailer, as has been said, who had undertaken to have him present at the time appointed by the committing magistrate and at all times pending the inquiry to answer not only the charge upon which he had been presented, but any charge connected with or growing out of it, of which, in the judgment of the court, the accused was probably guilty. Sections 66-99, Cr. Code Prac.; Marking v. Needy, 8 Bush, 23; Ramey v. Commonwealth, 83 Ky., 534; State v. Stout, 6 Halst. (N. J.), 124; People v. Stager, 10 Wend. (N. Y.), 433.

The writ is denied.