## McDaniel, Sheriff, et al. v. Sams et al.
(Decided April 30, 1935.)

BAILEY P. WOOTTON, Attorney General, RAY L. MURPHY, Assistant Attorney General, WM. LEWIS & SON and S. B. LITTLE for appellants.

A. T. W. MANNING and T. T. BURCHELL for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Theo Sams, Kelly Sams, Virgil Sams, Harvey Sams, Sydney Holliday, and Hughes Spurlock were, on the 14th day of July, 1934, residents of Clay county, Ky., when Hughes Spurlock was shot and wounded in that county. He was immediately conveyed to the hospital at Lexington, Fayette county, Ky., where he died from the effects of this shooting and wounding on the 20th day of July, 1934.

At 2:21 p. m., on the 20th day of July, Levi Spurlock, the father of Hughes Spurlock, appeared before William E. Nichols, judge of the Fayette county court, signed and verified an affidavit, required by section 31,

Criminal Code of Practice, setting forth the facts required by it. Harvey v. Commonwealth, 226 Ky. 36, 10 S. W. (2d) 471. Nichols, as county judge, issued thereon, as, and in the form, required by section 27, Criminal Code of Practice, a warrant of arrest, addressed "to any sheriff, constable, coroner, jailer, marshal or policeman, of the State of Kentucky," commanding either of them forthwith to arrest, for the crime of murder, Kelly, Theo, Virgil, and Harvey Sams and Sydney Holliday, committed by the shooting and killing Spurlock in Clay county from the effects of which he had died in Fayette county. It was carried by Levi Spurlock on the morning of the 21st, and delivered by him at Manchester, the county seat of Clay county, to T. C. McDaniel, sheriff of that county, for execution.

Immediately, McDaniel began to endeavor to locate and arrest the named defendants as directed by the warrant. Virgil Sams was in Cincinnati, Ohio, to which city he, Bob McDaniel, and Rex McDaniel went for the purpose of arresting him. On arriving at Cincinnati, he was informed that Virgil Sams had returned to his home in Clay county; he and his deputies went to his home and learned he had gone to Winchester, Ky.; on arriving at Winchester, he obtained information that he had gone back to Cincinnati. Acting on information, he went to Tyner, Ky., where he accomplished the arrest of Virgil Sams. He returned with his prisoner to Clay county. One of his deputies, acting under the Fayette county warrant, arrested Sydney Holliday in Clay county. He delivered Virgil Sams and Holliday to the jailer of Clay county, wherein were confined two of the other named defendants who had been arrested on a warrant issued by a justice of Clay county, for them, Virgil Sams, and Holliday, charging them with the crime of murder, committed in Clay county, by the killing of Spurlock. One of the other defendants had been arrested by a constable of Clay county on a warrant issued by the justice of Clay county, and who on account of being wounded was permitted to remain at home under guard. The sheriff, after placing Virgil Sams and Holliday in jail in Clay county, indorsed on the Fayette county warrant his return which reads:

"Sheriff's Return: The within named defendants, Theo Sams, Harvey Sams and Virgil Sams

and Sydney Holliday, each being in the custody of the jailer of Clay County, under warrants issued from Clay County, on this same charge, and awaiting examining trial before the county judge of Clay County, Kentucky, I have executed this warrant by reading the same to each of the above named defendants. The defendant, Kelly Sams, being wounded and physically unable to be moved from his bed, he being in custody of a guard under the above mentioned warrants from Clay County, I executed this warrant as to him by reading the same to him. This July 23rd, 1934.

"T. C. McDaniel, S. C. C.,
"Sheriff Clay County, Ky."

This return was prepared by an attorney of Sams and Holliday.

Some time during the day of the 21st, Toleman Burchell approached the county judge of Clay county and sought a warrant for their arrest for the killing of Spurlock. At that time the former had information of the issuance of the Fayette county warrant commanding their arrest and he declined to issue it. About 5 o'clock on the 21st of July, Ambrose Sams and Burchell carried Omer Gilbert to the home of a justice of the peace of Clay county, where Gilbert "swore out the warrant." On its issuance it was delivered to Ambrose Sams. Burchell was at the time an attorney and later represented the defendants in the Clay county prosecution. Jimmie Napier, a constable, resided about five miles from the home of the justice. The warrant of arrest issued by the justice was delivered to him for execution. Acting thereunder, he arrested Kelly Sams "and owing to his being wounded and bedfast, placed a guard over him." He arrested Theo Sams and Harvey Sams. After he arrested them, he and they remained over night at the home of Ambrose Sams, a brother of Harvey, Theo, Virgil, and Kelly, then he delivered them to the jailer of Clay county.

The justice deposed that the warrant was delivered to him by Toleman Burchell. It is dated July 21st. The justice declared this is its correct date, but at the time he signed and delivered it, it was not dated. Burchell informed him at the time that "he had tried to get a warrant from Judge Little and he would not issue

it," Little stating at the time that "a warrant from another county" had been issued and that he knew his purpose was to "go get one ahead of it." He also testified that Omer Gilbert "was sworn before" him; but Gilbert's statement was not reduced to writing; "about two or three weeks" "afterwards," his wife wrote the affidavit for him; that Gilbert did not sign it. An affidavit was presented to him while on the witness stand. It purported to have been signed and verified by Omer Gilbert before the justce. Thereupon, the justice asserted that he had sworn Gilbert to this affidavit on July 21st. It was typewritten. He admitted that Ambrose Sams, Toleman Burchell, and Omer Gilbert brought and delivered it to him. After testifying that Harvey Sams' name was not in the affidavit, he later stated that it was in it. The return on the warrant executed on Theo Sams, Harvey Sams, and Kelly Sams is indorsed by Napier as executed July 21, 1934. The Fayette county warrant is, also, indorsed, executed on Virgil Sams, July 22d, and Holliday, July 23d.

Toleman Burchell prepared the return of the Clay county warrant. Manning, counsel now of record of the defendants named in the warrants, prepared the above-quoted return on the Fayette county warrant.

On September 21st, the grand jury of Clay county returned an indictment against the defendants named in the warrants of arrest, charging them with the crime of murder, committed by the shooting and killing Hughes Spurlock. The county and commonwealth's attorney declare they had no connection whatsoever with the grand jury and its return of the indictment. Neither of them prepared it, nor had knowledge of its preparation and return by the grand jury. The names of Bertha Gilbert, Omer Gilbert, and Taylor Baker, friends of the Sams, are indorsed on it as witnesses before the grand jury. Omer Gilbert, whose name is indorsed thereon, is the same Gilbert who went with Burchell and Sams and procured the issuance of the warrant of arrest; Bertha Gilbert is his sister. One of the Sams boys presented the indictment to the commonwealth's attorney and requested him to sign it, which he did. He claims this was the first time during his term of office that he had so signed an indictment to be returned by the grand jury.

After their arrests, on the warrant issued by the justice of Clay county, they appeared before the county judge, executed bail in the sum of $5,000, each, to answer any indictment that might be returned by the grand jury of Clay county, and on the return of the indictment they continued on bonds and were thereunder at the bringing of this action.

They instituted it to obtain an injunction to prevent the sheriff delivering them in obedience to the warrant issued by the judge of the Fayette county court, to the jailer of Fayette county. The commonwealth's attorney was permitted to file in the name of the commonwealth an answer to the petition. After alleging the facts as we have stated them, he further pleaded that the obtention, the issuance, and the execution of the warrant issued by the justice of Clay county occurred subsequent to the issuance and delivery to the sheriff for execution the warrant of arrest for the named defendants for the same crime, by the judge of Fayette county, and that the so obtaining, issuing, and executing the warrant of arrest issued by the justice, the acts of the defendants in appearing in obedience to it before the county judge, as well as the procurement of the indictment by the grand jury of Clay county, were done by the defendants, by and through the aid of their relatives and friends for the fraudulent purpose of evading the law and defeating the jurisdiction of the courts of Fayette county.

On evidence adduced, the court decreed that Theo Sams, Harvey Sams, and Kelly Sams were entitled to relief sought, denied relief to Virgil Sams and Sydney Holliday, and dismissed the petition as to them.

The facts herein must be viewed in the light of section 1147, Kentucky Statutes, and sections 21 and 24, Criminal Code of Practice. Section 1147 reads:

"If a mortal wound or other violence or injury be inflicted, or poison be administered, in one county or corporation, and death ensues in another, the offense may be prosecuted in either."

Section 21 of the Criminal Code of Practice is in this language:

"If an offense be committed partly in one and

partly in another county, or if acts and their effects constituting an offense occur in different counties, the jurisdiction is in either county.''

Section 24 of the Criminal Code provides:

''If the jurisdiction of an offense be in two or more counties, the defendant shall be tried in the county in which he is first arrested, unless an indictment for the offense be pending in another county.''

We considered section 1147 and these Code provisions in Commonwealth v. Jones, 118 Ky. 889, 82 S. W. 643, 4 Ann. Cas. 1192; Spradlin v. Commonwealth, 221 Ky. 372, 298 S. W. 952, 953; Hargis v. Parker, 85 S. W. 704, 27 Ky. Law Rep. 441, 69 L. R. A. 270; Spencer v. Commonwealth, 194 Ky. 699, 240 S. W. 750; Clemons v. Stoll, 197 Ky. 208, 246 S. W. 810; Commonwealth v. Johnson, 249 Ky. 200, 60 S. W. (2d) 590; and Commonwealth v. Wolfford, 253 Ky. 593, 69 S. W. (2d) 1012.

In Spradlin v. Commonwealth we reviewed our previous opinions and stated our conclusion thus:

''Under this section of the statutes jurisdiction of the offense exists in the county where the mortal wound was inflicted and also in the county where the death occurred, and, under section 24 of the Criminal Code, the defendant shall be tried in the county in which he is first arrested unless an indictment for the offense be pending in another county.''

In Commonwealth v. Wolfford the deceased was wounded in Morgan county; later taken to Johnson county, where he died. On the day of his death, the grand jury of Johnson county returned an indictment against the accused charging him with murdering the deceased. A bench warrant was issued thereon, and, as the accused had left the state and concealed himself, it was never served. Thereafter, the grand jury of Morgan county returned an indictment against him, charging him with the crime. A bench warrant was issued on this indictment, but never served because of his concealment. Later, he was arrested by the sheriff of Morgan county on process issued on the indictment returned by the grand jury of that county. It was our conclusion that although the deceased was shot in one county and died from the effects of the wounds thus received in another, that the jurisdiction of the circuit

court of both counties were concurrent and the accused might be prosecuted in either county, and that in the absence of a statute controlling the matter, he having been first arrested under process issuing from the Morgan county court, it had jurisdiction to the exclusion of the Johnson circuit court, since there was no charge of collusion or fraud upon the part of the officers in attempting to vest either the Johnson circuit court or the Morgan circuit court with jurisdiction.

In Hargis v. Parker the victim was mortally wounded in Breathitt county and died from the effects of the wound in Fayette county. Thereafter, the grand jury in the latter county indicted the named parties accessories before the fact to the murder. Warrants were issued against them in Breathitt county, charging them with the same crime; they appeared and an examining trial was held, at which they executed bonds for their appearances to answer the charge before the Breathitt circuit court. These steps were taken before an indictment against them was returned by the grand jury of Fayette county. A writ of prohibition was sought against the judge of the Fayette circuit court to prevent him proceeding with the trial of the accused under the indictment returned by the grand jury of Fayette circuit court. They insisted that on these facts the exclusive jurisdiction to try them was fixed in Breathitt county, although the grand jury of Breathitt county had returned an indictment against them after the indictment in Fayette county. The commonwealth, at the request of the Attorney General and the commonwealth's attorney of that judicial district, was allowed to be made a defendant, and it defended the suit. One of the numerous defenses was that the alleged proceedings in Breathitt county, previous to the indictment returned by the grand jury of Fayette county, was a myth, or if in fact had, was the result of collusion between the accused and the officers, including the examining magistrate, and were originated for a fraudulent purpose to defeat the jurisdiction of Fayette county. This principle was stated:

> "The judgment of the court may be a punishment, or it may be a protection. It may or may not be a protection. It may or may not be a bar according to whether he who relies on it is in a position to do so. If it be obtained by fraud, the one pro-

curing it ought not to be permitted to use it as a protection. That would be to allow one to profit by his own fraud which is a doctrine repugnant to the law and wholly untenable by any mind of right thinking. * * * As between two persons, this is undeniably the law. The state will not be given less jurisdiction in matters of public concern than individuals. The courts which administer the law may protect their own jurisdictions from machinations, from palpable subterfuges intended merely to defeat their jurisdiction. The sovereignty of the law depends upon the power of the courts to maintain the integrity of their jurisdictions against mere devices that would defeat them. Judgments obtained by extrinsic fraud ought not to bind anybody not a party to the fraud. They ought to be, and are, subject to impeachment, either by direct or collateral attack. That is so, although the court rendering them had jurisdiction of the subject matter. Grignon v. Aster, 2 How. 319, 11 L. Ed. 283; United States v. Throckmorton, 98 U. S. 61, 68, 25 L. Ed. 93; Cole v. Cunningham, 133 U. S. 107, 112, 10 S. Ct. 269, 33 L. Ed. 538; Brunk v. Means, 11 B. Mon. 214; Talbott v. Todd, 5 Dana 190.''

This was the controlling principle in Clemons v. Stoll; Spencer v. Commonwealth; Spradlin v. Commonwealth, 78 Ky. 83. It was recognized last in Commonwealth v. Wolfford. It is now an inflexible rule in this state that one accused of crime cannot, himself, nor by or through the manipulations and connivance of his relatives, friends, his counsel, and officials, procure himself to be arrested and bound over, under the forms of law, to give jurisdiction to a county of his or their preference in fraud of the right of the prosecuting officers, acting in good faith to fix it elsewhere, if they chose to do so in the interest of a fair trial.

Our resume of the facts herein call for the application of this principle as to Kelly, Theo, and Harvey Sams.

The developed facts clearly demonstrate that the Clay county warrant against them, Virgil Sams and Holliday, their arrest, and the other steps taken thereunder and thereafter were solely to defeat the jurisdiction of the courts of Fayette county. Their jurisdiction cannot be taken from them by such procedure.

For this reason, the judgment is reversed as to Kelly, Theo, and Harvey Sams for proceedings consistent herewith.