[No. 25373. *En Banc.* August 2, 1935.]

THE STATE OF WASHINGTON, *Respondent,* v. LEO ASHE, *Appellant.*[1]

[1]Reported in 48 P. (2d) 213.

*Henry Clay Agnew,* for appellant.

*Warren G. Magnuson (Theodore S. Turner,* of counsel), for respondent.

HOLCOMB, J.—Appellant and one Andrew Head were both convicted under an information charging, under the first count, the placing of a girl in a house of prostitution, and under the second count, abduction. After the conviction, the trial judge sentenced both to consecutive sentences of imprisonment, from which Ashe alone appeals.

Count one of the information, omitting formal parts, reads:

"They, the said Andrew Head and Leo Ashe, and each of them in the County of King, State of Wash-

ington, on the 17th day of September, 1933, did then and there take one Dorothy Crays from King County to Pierce County, State of Washington, for the purpose and with the intent of then and there placing the said Dorothy Crays in a house of prostitution in Pierce County, and the said Andrew Head and Leo Ashe, and each of them did wilfully, unlawfully and feloniously place the said Dorothy Crays in a house of prostitution in said Pierce County, with intent that she should live a life of prostitution.''

Count two charges appellant and the other defendant with the abduction of the same girl in King county for the purposes of prostitution, as part of the same transaction.

Count one of the information is based upon Rem. Rev. Stat., § 2440 [P. C. § 9112], reading:

''Every person who—

''(1) Shall place a female in the charge or custody of another person for immoral purposes, or in a house of prostitution, with intent that she shall live a life of prostitution, or who shall compel any female to reside with him or with any other person for immoral purposes, or for the purpose of prostitution, or shall compel any such female to reside in a house of prostitution or to live a life of prostitution;

.    .    .    .    .    .    .    .    .    .

''Shall be punished by imprisonment in the state penitentiary for not less than one year nor more than five years.''

Count two of the information charges a crime under Rem. Rev. Stat., § 2439 [P. C. § 9111], defining abduction, and, in effect, charges both defendants with taking a girl below the age of consent, in King county, with the intent of placing her in a house of prostitution in Pierce county, Washington.

Appellant concedes that the state's evidence shows that both defendants went in an automobile from Seattle to Tacoma, Pierce county, with a girl seventeen

years of age, and that the purpose of the trip was to place the girl in a house of prostitution. She was accepted at one place where she.was taken and practiced that profession there and at other places in Tacoma thereafter. She testified that she gave all of her earnings to appellant.

Head did not take the witness stand, but appellant did. He denied that he had taken any part other than to drive the girl to Tacoma and leave her there with a young man. This denial, however, was manifestly disbelieved by the jury. There was ample testimony to support the convictions under both charges.

Appellant demurred to each count of the information, both on the grounds of want of facts and that the information was not substantially in the form required by the code. The demurrer was overruled, but was again interposed before trial. At both arguments, it was stressed that the information was defective in that it joined in one information two crimes, one complete in King county and the other complete in Pierce county. It was contended that the court had no power to grant a change of venue as to part of an information, and therefore the misjoinder of the two counts made the information defective.

Assignments of error numbered one and two are combined in one argument in that, in overruling the demurrer to the information and in denying the motion for change of venue as to count one, the trial court committed reversible error.

■■ The prosecution and the trial court based their actions on Rem. Rev. Stat., § 2013 [P. C. § 9391], which provides:

"When a public offense has been committed partly in one county and partly in another, or the act or effects constituting or requisite to the consummation

of the offense occur in two or more counties, the jurisdiction is in either county.''

Appellant relies on Art. I, § 22, of the Washington constitution, which prescribes:

''In criminal prosecutions, the accused shall have the right to . . . have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed, . . .''

Appellant asserts that the crime of placing a woman in a house of prostitution is one that is complete in the county in which it is committed. He concedes that it is true that there are crimes in which the essential acts may take place in more than one county, as in the case of *State v. Knutsen,* 168 Wash. 633, 12 P. (2d) 923, a case of larceny by false pretenses. There, the false pretenses were made in King county, while the property obtained by such false pretenses was delivered in Whatcom county. We held that the venue could be laid in either county, for the reason, as appellant says, that the false pretenses were an essential act of the crime itself.

Appellant also insists that there was nothing more than preparation to commit a crime in this case in King county, which is not a crime itself.

We do not agree with the argument of appellant. There was much more than mere preparation charged in King county to commit the crime. Appellant and Head were acting in concert and therefore were confederates in obtaining control of the girl, seventeen years of age, under the age of consent, in King county, and in taking her thence to Tacoma, Pierce county, where they put her into a house of prostitution. That was the inception of the crime, and had it been merely the taking of the girl from one town to another in the same county for that purpose, it amounted to the same thing. The fact that it was consummated in Tacoma

in Pierce county, which was also a part of the unlawful concerted action, essential elements of the crime charged, and requisite to its consummation, were all part and parcel of the same transaction.

Taking possession of the girl, under the age of consent, was the same as if they had seized and bound her, which would have been a forcible assault in King county, and taken her by force from one county to the other.

No constitutional right of appellant under the quoted section was violated, since its object is to guarantee a speedy trial by an impartial jury in the county in which the offense is charged to have been committed. This constitutional provision was manifestly intended to guarantee the right to a trial by a jury of the "vicinage," or locality of the county in which it was committed, by defining that vicinage or locality as a county. A crime may be a single act and immediate in all its consequences, and the locality where it was committed is its "vicinage." On the other hand, a crime may be the result of a series of acts or the result of a single act. The direct consequences may be made to occur at various times and in different localities. The criminal act, the motive of the perpetrator, the cause, and the effect, are but parts of the complete transaction. Wherever any part is done, that becomes the locality of the crime as much as where it may have culminated. *Commonwealth v. Jones,* 118 Ky. 889, 82 S. W. 643.

The statute is remedial and to be liberally construed. Identical or similar statutes have been passed in a number of states, and in some of them have been in existence for many years. Under such statutes, the vicinage of a crime begun in one county and finished in another, or where the cause occurs in one county and the result in another, has been deemed to be in

either county. *Commonwealth v. Jones, supra; Coleman v. State,* 83 Miss. 290, 35 So. 937, 64 L. R. A. 807; *People v. Crotty,* 9 N. Y. Supp. 937; *People v. Peckens,* 153 N. Y. 576, 47 N. E. 883 (citing with approval the *Crotty* case, *supra,* and others), *Archer v. State,* 106 Ind. 426, 7 N. E. 225; *Robinson v. Commonwealth,* 217 Ky. 129, 288 S. W. 1044; *State v. Spayde,* 110 Iowa 726, 80 N. W. 1058; *Reynolds v. State,* 18 Ariz. 388, 161 Pac. 885, Ann. Cas. 1918D 879.

In the *Spayde* case, *supra,* it was also stated that it is universally held in such cases that the court first acquiring jurisdiction holds it to the end.

In all of these cases, and others which could be cited under a similar statute, as well as the reasoning and principle applied in *State v. Knutsen, supra,* we must conclude that the trial court did not err in overruling the demurrer to the information and in denying the motion for change of venue as to count one.

The next complaint is that the court erred in admitting the testimony of Tacoma police officers as to the general reputation in Tacoma of three hotels in which the girl was placed for the purpose of prostitution as being houses of prostitution.

The complaining witness had testified that appellant and Head had placed her in a place called the MacBeth hotel, in which she lived with appellant and from which they moved to the Sherman hotel, and that both places were houses of prostitution, and that she practiced prostitution in both places. She also testified that both appellant and Head had taken her to the Svea hotel.

It was incumbent upon the state, of course, to show not only that the prosecuting witness was placed in a house of prostitution, but that both defendants intended she should live the life of prostitution. The knowledge of the accused of the character of the houses was therefore material as bearing upon their intent.

Evidence of such general reputation is admissible to prove knowledge by the accused. 10 R. C. L. 962, § 137, note 7. *State v. Ilomaki,* 40 Wash. 629, 82 Pac. 873; *State v. Stone,* 66 Wash. 625, 120 Pac. 76. In both of our cited cases, the charge against the accused was of placing females in houses of prostitution, in which we held that the evidence as to the character of the house was competent as showing the purpose of the accused in taking them there.

The next complaint is that the deputy prosecutor who tried the case in the lower court was guilty of misconduct in exhibiting a picture of appellant's wife in the presence of the jury. It is stated that the picture was a double rogues gallery picture, one of which had a number over the chest of the subject.

The record does not show, nor can any reasonable inference be deduced therefrom, that the jury saw or knew the character of the picture. The witness was merely shown a picture and asked if it was that of appellant's wife. Objection was made, argument was had thereon in the absence of the jury and the objection was sustained. The prosecutor complied with the ruling of the court and did not press the matter further. It is obvious that there was no error committed *(State v. Franklin,* 124 Wash. 620, 215 Pac. 29), but if there was it was the duty of counsel to request an instruction to disregard it, which was not done. *State v. Lindberg,* 125 Wash. 51, 215 Pac. 41; *State v. Crowder,* 132 Wash. 496, 231 Pac. 930. There was no such flagrant misconduct in violation of the right of the accused to a fair trial as occurred in *State v. Devlin,* 145 Wash. 44, 258 Pac. 826, necessitating a reversal of this conviction, as contended by appellant.

The last complaint of error is based upon the reception of an admission in rebuttal made by defend-

ant Head to an officer who reduced it to writing and it was sworn to by Head.

Head did not testify, but he was jointly charged with appellant, and it must be remembered that they were confederates in the crime, acting in concert, up to the time of their arrest and the alleged admission by Head to the officer. *(State v. Kelly,* 139 Wash. 636, 247 Pac. 939.) The situation in this case is similar to· that in *State v. Green,* 158 Wash. 574, 291 Pac. 728, where the accused was charged with bookmaking. Prior to the trial, he had been questioned by the prosecutor; and at the trial, certain answers were admitted against him over his objection. The accused claimed that these answers were not competent as substantive evidence of the crime charged, although they might have been competent as impeaching evidence.

We there said:

"But this mistakes the rule. In both civil and criminal causes, an admission against interest by a party to the action is admissible as evidence against him. The rule is, of course, different as to a mere witness. Statements made elsewhere by a witness contradictory of his testimony on the witness stand cannot be shown until after they are called to his attention and he is given an opportunity to admit or deny them and does deny them. But an admission against interest by a party to the action or proceeding is substantive, not impeaching, evidence."

To the same effect are *State v. McGonigle,* 144 Wash. 252, 258 Pac. 16; *State v. Whitelaw,* 163 Wash. 347, 1 P. (2d) 212; and *State v. Kelly, supra.*

Hence, although Head did not testify and appellant on the witness stand, for the benefit of both himself and Head, denied the facts as stated to the officer, it was nevertheless competent testimony against both Head and appellant, although probably inadmissible had appellant been on trial alone.

Finding no error in the record, the judgment is affirmed.

MILLARD, C. J., TOLMAN, GERAGHTY, MAIN, MITCHELL, and BEALS, JJ., concur.

STEINERT, J. (concurring in the result)—I do not agree with the statement in the opinion to the effect that the written admission by Head, which was made *after his arrest,* was competent evidence against *both* defendants. Where parties conspire or confederate to commit a crime, any statement made by one *after* the formation of such conspiracy and *before* the commission of the crime is competent against the other. But *after* the commission of the offense, the statement of one, made out of the presence of the other, would not be competent against the other.

In this case, however, the record shows that the statement by Head was admitted in evidence as to him only, and, of course, would be competent as to him. Were this made to appear in the opinion, there would be no violation of the rule.

I therefore concur in the result.

BLAKE, J. (dissenting)—Under § 22, article I, of the constitution, defendant had the right to be tried in Pierce county on the offense charged in count one. No essential element of the crime charged in that count was committed in King county. Under the majority holding, defendant could have been held for trial in King county on a charge of robbery had he by force taken property from the person of the complaining witness after taking her into Pierce county. The holding is, in principle, directly contrary to our holding in *Cartier Drug Co. v. Maryland Casualty Co.,* 181 Wash. 146, 42 P. (2d) 37. While that was a civil action, involving the construction of a robbery insurance policy, it was decided on the authority of cases holding

that the venue of a criminal action lies in the county where the acts constituting the offense were perpetrated, and not in the county where the intent to commit the crime was conceived. *Sweat v. State,* 90 Ga. 315, 17 S. E. 273; *State v. McAllister,* 65 W. Va. 97, 63 S. E. 758, 131 Am. St. 955.