[No. 22432. Department Two. September 24, 1930.]

THE STATE OF WASHINGTON, *Respondent*, v. IRVING
GREEN, *Appellant*.[1]

[1]Reported in 291 Pac. 728.

*Trefethen & Porterfield* and *Mark M. Litchman,* for appellant.

*Ewing D. Colvin* and *Ralph Hammer,* for respondent.

*Trefethen & Porterfield, amicus curiae.*

Fullerton, J.—Irving Green was convicted of a crime denominated "bookmaking" in the information filed against him, and appeals from the judgment of conviction.

The information on which the appellant was convicted consists of four counts. In the first count, he was charged with the offense of being a common gamber. The second count reads as follows:

"And I, Ewing D. Colvin, Prosecuting Attorney aforesaid, do further accuse Irving Green of the crime of bookmaking, committed as follows, towit:

"He, said Irving Green, in the county of King, state of Washington, on or about the 23rd day of November, A. D. 1928, acting as agent for one Edward Melhart, did then and there willfully, unlawfully and feloniously receive from said Edward Melhart money designed and intended to be bet, wagered and hazarded upon the result of a contest of skill, speed and endurance between men, towit, a football game.

"Contrary to the statute in such case made and provided, and against the peace and dignity of the state of Washington."

The third and fourth counts in the information are identical in language with count two, except as to dates and events; the dates being of a time subsequent to that stated in the second count, and the event in the one being a prize fight and in the other a boat race. The jury, at the trial, acquitted the appellant of the charge contained in the first count of the information, and convicted him on the other three.

The appellant interposed a demurrer to the information, which the trial court overruled, and the first error assigned is based upon this ruling. The statute upon which the information is based, is found at § 2473 of Rem. Comp. Stat., and reads as follows:

"Section 2473. Poolselling and Bookmaking.

"Every person, whether acting in his own behalf, or as an agent, servant or employee of another person within or outside of this state, who shall sell any pool, make any book, or receive, record, register, transmit or forward any bet or wager, or any money or property or thing of value designed or intended to be bet,

wagered or hazarded, upon the result of any contest or trial of skill, speed or endurance between men or beasts, whether such contest or trial take place within or outside of this state, or upon the result of any lot, chance, casualty, or uncertain or contingent event whatever, shall be punished by imprisonment in the state penitentiary for not more than five years.''

It is with some difficulty that we have followed the argument on this branch of the case, but, if we have correctly gathered it, it is that the statute is aimed at bookmaking as that term is commonly understood, and that the acts charged against the appellant in the several counts on which he was convicted do not come within any of the accepted definitions of that term. But, while the phrase, ''poolselling and bookmaking'' is the legislature's own, and are the names by which that body designated the acts which it denounced as a crime in the body of the section following the names, we cannot think that the legislature thereby intended to say that anything more than the denounced acts were necessary to constitute poolselling or bookmaking. In other words, the acts the legislature denounced as a crime must be found in the body of the section to which the names are applied, not from the common or ordinary definitions of the names themselves.

Turning to the language of the section quoted, it will be observed that the legislature denounced it as a crime for any person to

'' . . . receive . . . any money or thing of value designed or intended to be bet, wagered or hazarded, upon the result of any contest or trial of skill, speed or endurance between men or beasts, whether such contest or trial take place within or outside of this state, . . .''

The counts in the information follow almost literally the wording of the statute, and are clearly sufficient under the rule in this state as we have repeatedly an-

nounced it. The statute thus construed is indeed drastic, and it may be, as the appellant contends, that, construed in this manner, it will punish a minor transaction, not particularly harmful in itself, with a severity not usual under the criminal statutes. But, if it has these consequences, the remedy must be sought before the law-making power. The courts cannot, for this reason, ignore or set aside a plain mandate of the legislature. It can inquire into its constitutional powers to pass the law, and can inquire into the procedure to ascertain whether the purported law is in fact a law, but they may not find the law invalid because of its severity unless it falls within that clause of the constitution which prohibits the infliction of cruel punishments, and this act we cannot say does this.

The cases the appellant cites to maintain his contention we shall not specially review. The ones most nearly in point are found in the New York Supplement reports. But these are not opinions of the appellate division of the supreme court of that state. They are but opinions of individual judges of the court in cases before them on writs of habeas corpus. Nor are the reasons given in the opinions for the conclusions reached at all appealing, at least, they are not so to us. An illustration taken from one case will suffice for the others. A defendant was accused of gambling, the overt act constituting the offense being betting on the result of a game of golf. While the cause was pending before a magistrate, a judge of the appellate division of the supreme court issued a writ of habeas corpus, and, after a hearing on the writ, discharged the defendant. The judge, after stating that the statute was not directed against betting, used the following language:

"The law has never descended to thrusting its nose into the personal conduct of men and women to

that extent, and those who try to make out that it has only tend to create a disrespect for it. In the administration of the laws no one should set himself up as better or stricter than the laws. No law can be enforced except by public opinion, and wise legislators never pass a law which lacks public opinion in its favor. Such laws are dead letters, except as they are stirred up from time to time by the few among us who delight in meddling with the conduct of others, or to levy blackmail. The community sheds them as a snake sheds its skin.''

The cases from other jurisdictions, where, as we conceive, the language is more becoming to the dignity of a court, are founded on statutes so widely different from our own as to be of no aid in the determination of the question here involved.

■ The next contention is that the evidence did not justify the verdict of the jury. The evidence we shall not review in detail. It is sufficient to say that it all but conclusively shows that the appellant, between November 1, 1928, and June 29, 1929, received from the person named in the information to be bet on different contests, such as football games, baseball games, prize fights and college crew races, sums aggregating approximately $20,000. Since we find that the statute makes it a crime for one person to receive money for these purposes from another, there is no question as to the sufficiencies of the proofs.

■ Of the trial errors of which complaint is made, the first is founded on the opening statement of the prosecuting attorney to the jury. In the course of his statement, the attorney used this language:

''We will show you that the defendant called Mr. Melhart, whom he knew to be the cashier in the treasurer's office in Bellingham, and from time to time advised him to bet money through him in Seattle, and we will show you, in furtherance of Mr. Green's solicitation, that this young man did bet large sums of money

and that he bet on several occasions money which he had secured—some was his own at first and later he sent down altogether $20,000 to this defendant, losing most of the money through Mr. Green.

"We will show that Mr. Melhart came down and told Mr. Green that he was short $18,000 in his accounts with the treasurer's office. We will show Mr. Green said, 'I could see the handwriting on the wall. I knew you were going to lose.' And we will show you that, after Mr. Green knew that this young man was $18,000 short with Whatcom county, Mr. Green solicited some money from him and did receive two more bets, one in the sum of $1,000 on this . . ."

At this point, the attorney for the defendant interrupted the prosecuting attorney, and made the objection that the source from which Melhart received the money which he forwarded to the appellant was not a material circumstance, and not proper to be received in evidence. After some discussion, the trial court ruled with the objection, whereupon the attorney moved the court to discharge the jury for the reason that the attorney was guilty of misconduct

". . . of such a character the prejudice created in the minds of the jury thereby could not be removed or obliterated by an instruction to disregard the same."

The court refused to grant the motion, and it is contended in this court that it erred in so refusing. But we find nothing in this that requires a reversal. There was nothing willful in the conduct of the prosecuting attorney. He believed, and ably contended, that testimony to the effect stated was admissible. However, after the court ruled on the contention, he made no further reference to it, and the court itself admonished the jury to the effect that the statement of the attorney was not evidence, and that they must determine the guilt or innocence of the defendant from the evidence

to be introduced at a later stage of the trial. Later on, when the state was introducing its proofs, the source from which Melhart obtained the money which he forwarded to the defendant did appear, and the court again instructed the jury that it was not to be taken as evidence of the appellant's guilt. Objections of this sort are not strangers to this court. In a number of instances, the same question has been raised, and we have uniformly held that it is a matter that can be cured by instruction. Our latest case on the question is *State v. Edelstein,* 146 Wash. 221, 262 Pac. 622, where many of our earlier cases are collected.

After the appellant had been arrested, he was questioned as to his part in the transaction by the prosecuting attorney of King county, in the presence of the prosecuting attorney of Whatcom county and a court stenographer. Certain of the answers he made to questions they propounded to him, were offered at the trial, and over his objection were admitted. This is thought objectionable for several reasons, the first of which is that it was not competent as substantive evidence of the crime charged, although it might have been as impeaching evidence. But this mistakes the rule. In both civil and criminal causes, an admission against interest by a party to the action is admissible as evidence against him. The rule is, of course, different as to a mere witness. Statements made elsewhere by a witness contradictory of his testimony on the witness stand cannot be shown until after they are called to his attention and he is given an opportunity to admit or deny them and does deny them. But an admission against interest by a party to the action or proceeding is substantive, not impeaching, evidence.

The second contention seems to be that the admissions were obtained by duress and fear produced

582

by threats. But we find nothing to substantiate this charge. There were no "third degree" methods employed, as his counsel insinuate, if they do not so directly argue. No abusive tactics were indulged in. Questions were asked him which he answered in his own way without interruption or hindrance.

■ The third reason urged against the testimony is stated by counsel in these words:

"There is no authority for the proposition anywhere that authorizes the circumstances of acquiescence or silence to be weighed against a person charged with the commission of an offense when he makes a flat denial of complicity in the offense."

But the court carefully guarded the evidence in this respect. It admitted nothing in evidence except such statements and answers as were clearly admissions, and plainly these were not inadmissible because the appellant denied complicity in the offense.

The other objections to this part of the testimony are less pertinent than even these, and require no special consideration.

■ During the course of the trial, the state called the Melhart named in the information as a witness in its behalf. To certain questions propounded to him, he refused to answer, and this after the court had admonished him that they were proper questions, and questions which he was required to answer. The court thereupon recessed, and the witness· was called into the chambers of the court where the matter was discussed with him in the presence of the judge of the court, the prosecuting attorney, the wife of the witness, and perhaps others. At this interview, the witness concluded to testify, and afterwards did testify as to his part in the transaction thought to show the guilt of the appellant. Neither the appellant nor his

attorney was present at the interview, nor were they invited or solicited so to be.

While the appellant complains with some bitterness of the transaction, we see nothing untoward in it, and nothing of which the appellant can justly complain. The questions propounded the witness were such as he was required to answer. His answers would in no way lead to incriminate him, nor did he assign this as a reason for refusing to answer. His continued refusal would have subjected him to punishment, and the action of the court doubtless had the humane purpose of avoiding subjecting him to that ordeal. The fact that the appellant was not present at the time does not affect the situation. The proceeding was no part of the trial. The witness was the state's witness, and whether he testified or did not testify was of no legal concern to the appellant. However much he may have been interested in having the witness continue in his refusal to testify, neither he nor his counsel, had they been present, could have urged him so to do without subjecting themselves to drastic action by the court. Whether coercive or intimidating acts on the part of the judge or the others of those present would have affected the situation, we need not consider. Nothing of this sort appears.

■ It is next urged that there is a fatal variance between the pleadings and the proofs. The charge in the information is, it will be remembered, that the appellant, acting as agent for one Edward Melhart, did willfully, unlawfully and feloniously receive from Melhart money designed to be bet, wagered and hazarded upon the result of a contest of skill. The proofs were that Melhart did not hand the money to the appellant personally, but sent him checks, bank drafts, and telegraphic money orders, and that the appellant received money by transferring and cashing these. But this is

584

a sufficient delivery of the money to meet the requirements of the statute. The statute does not mean that the deliverer must hand the money personally to the receiver. It is enough if he causes the money to be delivered. As we said in *State v. Hoshor*, 26 Wash. 643, 67 Pac. 386, speaking of a similar contention:

"The check was simply the instrumentality by which Hoshor obtained the money from the bank, as much so as if Torrence had taken the $20,500 in gold in his hand and passed it over to defendant, and defendant had immediately passed it back to the bank and received credit for it. When Hoshor drew the money from the bank by his own check and transferred it thereby to another, the effect was the same as if he had taken the identical money and handed it by his own hand to that other. *Commonwealth v. Mead*, 160 Mass. 319 (35 N. E. 1125); *Commonwealth v. Smith*, 129 Mass. 104; *Commonwealth v. Tuckerman*, 10 Gray 173; *Territory v. Meyer*, 3 Ariz. 199, 24 Pac. 183; *People v. Gallagher*, 100 Cal. 466 (35 Pac. 80); *State v. Palmer*, 40 Kan. 475 (20 Pac. 270); *Roberts v. People*, 9 Colo. 458 (13 Pac. 631); *Ex parte Ricord*, 11 Nev. 287; *People v. Civille*, 44 Hun. 497."

It is next complained because the court allowed the state to show the transfer of checks to the appellant to be wagered on contests not of the character of those specifically mentioned in the counts of the information on which the appellant was convicted. But the state, in addition to showing that the appellant received money from Melhart to be wagered on the specific contests set out, endeavored to show that he was a common gambler, and we think the evidence admissible as bearing upon that charge, even if it was inadmissible as bearing upon the other counts. Certainly, it is some evidence that a person is a common gambler to show that he receives large sums of money and wagers it on the outcome of the events he is directed so to do. It is true that the jury acquitted the

appellant on this count, but this did not render testimony competent to prove the charge inadmissible; it simply presents an instance where the jury thought the evidence insufficient to prove the count in the information to which it was directed.

It is next contended that the court, in its charge to the jury, commented upon the facts. This contention arises out of the following circumstances: The state, in its endeavor to prove each several count, introduced evidence applicable to the particular count but which was inapplicable to, and had no tendency to prove, the other counts. The court, in its charge, with some particularity, segregated the evidence, and pointed out to the jury the particular count to which the evidence was applicable. But, in so doing, it did not indicate to the jury any opinion of its own as to the weight or sufficiency of the evidence, nor did it tell the jury or assume that the evidence was sufficient to prove any particular fact. On the contrary, it charged the jury, in language incapable of being misunderstood, that it was their duty to weigh the evidence, and their privilege to say whether it satisfied their minds beyond a reasonable doubt that the acts charged against the accused in any of the counts were proven.

The clause in the constitution forbidding courts to charge juries with respect to matters of fact, or to comment on facts, does not forbid them from making reference to the evidence. To comment on the facts is to make statements with respect to the sufficiency and value of the evidence by which a fact is sought to be proven; or, in certain instances, to assume that a fact has been proven by the evidence; it does not prohibit the court from stating to the jury the evidence which they are at liberty to consider in determining whether a given fact has been or has not been proven.

The appellant further argues, if we understand

him, that the very particularity with which the court marshaled the evidence was detrimental to his interests. But we see no objection to the charge on this score. While the court might properly have stated to the jury the facts necessary to be found by them in order to find the accused guilty on each particular count and left it to them to say whether the evidence was sufficient to sustain the charge, we can but feel that his rights were better protected by the course it did pursue than they would have been had the court given a more general charge. By the course pursued, the jury were not left to grapple with the evidence as an entirety and themselves say what part of it was applicable to a particular count of the information.

The next contention is that the prosecuting attorney exceeded his privileges in his argument. To make the objection clear would require a somewhat extended statement, which we do not feel that the merits of the contention justify. It is sufficient to say that we have examined the record with care and find nothing in the argument which the court ruled to be permissible that would justify a reversal of the judgment of conviction.

The appellant filed an opening brief and a reply brief to the answering brief of the state. In addition to these, his counsel have filed a brief termed a brief amicus curiae, in which many of the questions presented in the case briefs are re-argued. These questions we shall not further notice.

However, counsel seem to assume that the appellant is a mere stakeholder of money bet by others on contests of skill, and an extended argument is made in an effort to show that this is not an offense which the statute was intended to prohibit. We think we may safely agree with this contention. But it is not the offense with which the appellant was accused. He was accused of receiving money designed and intended

to be bet, wagered and hazarded upon the result of certain contests, and the proofs show that he himself bet, wagered and hazarded the money in accordance with the directions. This is not to act as a mere stakeholder. It is to do the very acts the statute denounces as a crime, and the court cannot set aside the conviction unless it finds that the statute itself is void because in violation of the fundamental law. This, as we have hereinbefore indicated, we are not inclined to do.

There are other objections made which are thought to require a reversal. But in so far as they are not met in the preceding discussion, it is sufficient to say that we find them without merit.

The judgment is affirmed.

MITCHELL, C. J., HOLCOMB, and MAIN, JJ., concur.