[No. 25806. *En Banc.* April 1, 1936.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH D. BURNHAM et al., *Appellants.*[1]

[1]Reported in 56 P. (2d) 170.

*S. A. Gagliardi* and *Thomas F. Ray,* for appellants.

*Harry H. Johnston, J. W. Selden,* and *A. M. Ursich,* for respondent.

GERAGHTY, J.—The appellants were found guilty of the crime of grand larceny as charged in an indictment returned by a Pierce county grand jury. Of the numerous errors assigned, those relating to the manner of impaneling the grand jury and the employment by the court of a special prosecutor to attend upon the sessions of the grand jury are disposed of, contrary to the contention of appellants, in *State v. Guthrie, ante* p. 464, 56 P. (2d) 160. Of the remaining assignments, only those raising the issue of the sufficiency of the evidence to sustain the verdict call for discussion, in view of the conclusion we have reached.

The charging part of the indictment follows:

"That the said Alfred J. Davis, Kenneth D. Burnham, and Frank G. Bampton, in the county of Pierce, in the state of Washington, on or about the 16th day of October, 1933, and on divers other dates and days from thence continuously to the 1st day of October, 1934, then and there being, did then and there unlawfully and feloniously, with intent to deprive and defraud Pierce county, a municipal corporation of the state of Washington, the owner thereof, obtain from said Pierce county possession of and title to One thousand, eighty-nine ($1,089) Dollars in money of the value of $1,089, in lawful money of the United States of America, by color and aid of false and fraudulent representations and pretenses and by false token, and by trick and device, in this:

"That the said Alfred J. Davis, Kenneth D. Burnham, and Frank G. Bampton, then and there being agents, directors and officers of Pacific Fuel Company,

a corporation, for and on behalf of said Pacific Fuel Company did enter into a contract with Pierce county on or about the 16th day of October, 1933, which contract was approved and accepted by Pierce county to sell, furnish and deliver to Pierce county 16-inch green slab wood at a price of $3.00 per cord, delivered at the Pierce County Fuel Yard at 11th & 'G' streets, in Tacoma, which contract was to remain in full force and effect until cancelled by either party thereto; that in furtherance and pursuance of said contract the defendants, and each of them, falsely pretended to deliver to Pierce county, at its said fuel yard, on divers days and dates continuously between the 16th day of October, 1933, and the 1st day of October, 1934, 2,178 cords of 16-inch green slab wood, when in truth and in fact, as they, the said defendants, and each of them, well knew, they delivered and caused to be delivered to Pierce county 1,815 cords of said wood, and no more; that said defendants on divers dates and days continuously on and between said 16th day of October, 1933, and the 1st day of October, 1934, did submit to and file with said Pierce county vouchers and claims for payment for said wood, falsely and fraudulently representing therein that they, the said defendants, had sold to and delivered to said county, 2,178 cords of said wood, which false and fraudulent representations were made to deceive, and the proper officers of said Pierce county relying upon said false and fraudulent representations which they believed, approved said vouchers and claims for payment for the amount of Sixty-five hundred, thirty-four ($6534) dollars, which vouchers and claims for payment in the amount of $6,534.00 were duly paid by said Pierce county to said defendants, whereas, in truth and in fact said defendants, and each of them, well knew said defendants had delivered and caused to be delivered to said Pierce county only 1,815 cords of said wood, and no more; thereby defrauding and depriving said Pierce county of the sum of $1,089, which said defendants did receive with intent to and they did appropriate to their own use, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Washington.''

After the return of the verdict and the granting of his motion for a new trial, the prosecution was dismissed as to the defendant Davis.

It will be noted, by reference to the indictment, that the grand larceny is charged to have been committed between the sixteenth day of October, 1933, and the first day of October, 1934; that between those dates the defendants obtained from Pierce county "possession of and title to One thousand, eighty-nine ($1,089) Dollars in money of the value of $1,089, in lawful money of the United States of America," by color and aid of false and fraudulent representations that they had delivered to the county within that period 2,178 cords of 16-inch green slab wood, for which they received the agreed price of three dollars per cord, or $6,534, whereas in truth and in fact they had delivered only 1,815 cords of wood of the value of $5,445, thereby defrauding the county out of $1,089. Assuming, for the purposes of the case, the state's contention that the evidence established that only 1,815 cords of wood were delivered, it was conceded upon the trial that only $918 in money had been paid by the county to the appellants through the redemption of warrants, during the period covered by the indictment.

The case was tried upon the theory that the contract was to be considered as a whole, in determining whether or not the county had been defrauded, and this theory was expressed by the court in instruction No. 14, which became the law of the case, as follows:

"You are instructed that this charge here layed is the crime of grand larceny, and as here charged is predicated upon the failure to deliver a quantity of wood definitely described in the indictment, and less in fact than the quantity for which payment was made. It, therefore, becomes your duty to determine what wood was delivered to Pierce county from the 16th day of October, 1933, to the 1st day of October, 1934, inclu-

sive, and before you are justified in returning a verdict against the defendants, or any of them, you must find beyond a reasonable doubt that the defendants did not between these two dates deliver 2,178 cords of wood and that they did in fact deliver an amount less than 2,178 cords, and this to their unlawful profit in some sum in excess of $25, and unless you so find beyond a reasonable doubt, it is your duty to return a verdict of not guilty in favor of the defendants.''

It will thus be seen that the charge against the appellants, as interpreted by the court, was that, having represented that they had delivered 2,178 cords of wood, and been paid for that amount, between the sixteenth day of October, 1933, and the first day of October, 1934, they in fact had delivered a less quantity than this between these dates, to their own unlawful profit in a sum in excess of twenty-five dollars.

At stated times, as the wood was delivered to the county by the appellants, warrants were issued to them for the amount of wood shown by the vouchers to have been delivered. These warrants were drawn upon the county's current expense fund, to be paid in the order of issue, as and when money was available in that fund. The warrants were, in form, an order by the county auditor to the county treasurer to pay the specified amount out of the designated fund. The warrants, when presented to the county treasurer, were not paid, for want of funds, and were stamped on the reverse side, ''Until called for payment this warrant bears interest at 6% per annum.''

The state, in its brief, puts the issue thus:

''Under this assignment respondent concedes, of course, that the information did charge the defendants with obtaining from Pierce county possession of and title to One Thousand Eighty Nine Dollars ($1,089) in money of the value of One Thousand and Eighty Nine Dollars ($1,089) in lawful money of the United States of America by color and aid of false and fraudulent

representations . . . Appellants' sole contention under these assignments is that they were charged in the information with having stolen this sum of money, but as a matter of fact all they got from Pierce county was its warrants. For that reason they claim they did not steal any lawful money of the United States. That the state was bound to prove the crime between the two dates specified in the information is admitted without any argument. This raises the direct question: Were the warrants, when they were delivered to the Pacific Fuel Company, payment for the wood received by the county, or could it be held that payment was only made at the times these warrants were later cashed by the county?''

County warrants are not negotiable instruments. While assignable, the assignee takes title subject to any defect, irregularity, or illegality in their issue.

''It is well settled in this state that purchasers of municipal warrants take subject to all defenses that may be made against them, and if warrants are void they cannot be enforced, even in the hands of an otherwise innocent holder.'' *State ex rel. State Bank v. Scott,* 102 Wash. 510, 173 Pac. 498.

''It is well settled that warrants or drafts upon the treasurer of a municipal corporation can be issued only in the manner and for the purposes prescribed by law, and when they are issued for a purpose not authorized by law they are void and cannot be collected. So also lack of consideration is a good defense to an action on a municipal warrant. . . . If a warrant was illegally issued it can make no difference that it is in the hands of a purchaser for value without notice of any illegality or irregularity in the warrant, since it is well settled, by considerations of public policy as well as by a decided preponderance of authority, that warrants or orders drawn by one municipal officer upon another, in the disbursement of the funds of the municipality and payment of its indebtedness, are not to be regarded as negotiable or commercial paper, cutting

off equities against the corporation." 19 R. C. L. 1036.

So, then, the situation, as it existed on the date of the return of the indictment, was that the appellants had delivered to the county at least 1,815 cords of wood of the value of three dollars per cord, and they had been paid out of the county treasury $918 in money therefor, or the equivalent of about fifty cents a cord. It was in the power of the county to refuse payment of any sum above that which it was justly required to pay. The fact that written orders in the form of warrants had been issued by the county auditor, directing the county treasurer to pay a given sum of money to the appellants, did not foreclose the remedy of the county, even if the warrants had been assigned for value and without notice. In this connection, while not strictly bearing on this assigned error, attention may be directed to the trial court's sixth instruction, where the court charged the jury that, before they could find the defendants guilty of the crime of grand larceny, the state was required to prove

". . . that the money, called county warrants, charged in the indictment, was obtained by color or aid of any fraudulent representations," etc.,

and reference is made in the instruction several times to "money, called county warrants."

The word "money" has, of late, been given a widely inclusive meaning, but we are aware of no authority for the doctrine that county warrants, whose payment has been deferred for want of funds, constitute money. We refer to this instruction as it emphasizes the theory of the state that the warrants were accepted in a Pickwickian sense as money; but the indictment nowhere refers to warrants, or to the payment of money, called warrants. The charge is that the appellants, with intent to defraud Pierce county, did

". . . obtain from said Pierce county possession of and title to One Thousand, eighty-nine ($1,089) Dollars in money of the value of $1,089, in lawful money of the United States of America,"

and, again, that the defendants submitted false vouchers to the county representing that they had delivered 2,178 cords of wood, whereas they had delivered only 1,815 cords

". . . thereby defrauding and depriving said Pierce county of the sum of $1,089, which said defendants did receive with intent to and they did appropriate to their own use."

Municipal warrants are not money, nor are they ordinarily taken from the issuing authority as payment of a debt. They evidence a debt and are an instrumentality in the process of payment. But, until paid, the debt they evidence is not extinguished. "It [a warrant] is neither a bill, note, check nor contract, nor is it a satisfaction of the original indebtedness, . . ." *Allison v. Juanita County,* 50 Pa. St. (14 Wright) 351. See, also, *Protest of St. Louis-San Francisco R. Co.,* 157 Okla. 131, 11 P. (2d) 189.

Being assignable, warrants may pass current in a limited sense and within a limited area, dependent upon the solvency of the issuing authority. By private contract between individuals, they may be accepted in full payment of money obligations. But when the creditor of a municipal corporation accepts its warrant, he is not thereby paid the debt due him, although he may be so far bound that he must look to the fund upon which the warrant is drawn for satisfaction, in accordance with the tenor of the warrant as to the order and manner of payment.

We do not wish to be understood as contending that, to sustain an indictment for larceny, money, rather than warrants, must have been received by the accused

in the first instance. If the money is obtained unlawfully through the instrumentality of a warrant, possession of the money is illegally obtained as much so as if it had been paid directly in the first instance. *State v. Krug*, 12 Wash. 288, 41 Pac. 126. It appears from the record that several of the warrants issued to appellants were called and paid after the return of the indictment. These warrants were received in evidence over the appellants' objection, and should have been excluded for the reason that they did not evidence the payment of money within the time charged in the indictment. The state admits that it was bound to prove the crime charged between the two dates specified in the indictment, but contends that the required proof was supplied by the warrants delivered to appellants, even though not paid by the county within that period. With this contention, we do not agree. The issue of the warrants was but a step in the process of payment, not completed within the time laid in the indictment. As the transaction stood at the time of the return of the indictment, the county had suffered no money loss and could have protected itself by a refusal to acknowledge the warrants. While the appellants may have been amenable to prosecution under other provisions of the criminal statutes of the state, they had not, at the time of the indictment, committed the offense with which they were charged.

The state cites several cases, none of which sustains its contention. In *Roberts v. People*, 9 Colo. 458, 13 Pac. 630, in passing upon the contention that there was a variance between the allegations of the indictment and proofs concerning the payment to the defendant, and the receipt by him, of money alleged to have been fraudulently obtained from the county, the court said:

"The indictment charges that the defendant, by certain false pretenses which are set out, defrauded the

county out of a certain sum of money. On the part of defendant it is contended that the proof does not show that he even ever got a dollar of this money. The evidence shows that the account presented by the defendant, the same being for the sum of $96, was audited and allowed; that a county warrant for that sum of money, of the par value of $96, was issued, payable to bearer, and delivered to the defendant; that there was at that time money in the county treasury for its payment; and that it was presented to the treasurer, and duly paid by him. The treasurer, however, could not state to whom he had paid the money. The county was clearly defrauded of its money by the defendant, by reason of the false pretenses alleged. C. M. Farrar, whose name had been used for this purpose, had nothing to do with the transaction and received neither the warrant nor the money. In fact, he did not know that such an account had been presented, nor that a county warrant had been issued or paid, until long afterwards. He had served but seven and one-half days instead of sixteen days, as alleged by defendant, and at a *per diem* of $4 instead of $6, as represented by the account filed. *Under all the circumstances in evidence, the presumption of facts obtains that the defendant presented or caused the warrant to be presented, and obtained the money.*" (Italics ours.)

In that case, the money, through payment of the warrants, had been paid by the county. Here, if the county had paid the warrants issued to the appellants during the time covered by the indictment, whether the money was paid directly to them, or paid to their assignees, the state would have made its case on the issue of payment.

The case of *State v. Green,* 158 Wash. 574, 291 Pac. 728, is cited. The state's own quotation from this case demonstrates the unsoundness of its position:

"It is next urged that there is a fatal variance between the pleadings and the proofs. The charge in the information is, it will be remembered, that the appellant, acting as agent for one Edward Melhart, did will-

fully, unlawfully and feloniously receive from Melhart money designed to be bet, wagered and hazarded upon the result of a contest of skill. The proofs were that Melhart did not hand the money to the appellant personally, but sent him checks, bank drafts, and telegraphic money orders, and that the appellant received money by transferring and cashing these. But this is a sufficient delivery of the money to meet the requirements of the statute. The statute does not mean that the deliverer must hand the money personally to the receiver. It is enough if he causes the money to be delivered. As we said in *State v. Hoshor,* 26 Wash. 643, 67 Pac. 386, speaking of a similar contention:

" 'The check was simply the instrumentality by which Hoshor obtained the money from the bank, as much so as if Torrence had taken the $20,500 in gold in his hand and passed it over to defendant, and defendant had immediately passed it back to the bank and received credit for it. When Hoshor drew the money from the bank by his own check and transferred it thereby to another, the effect was the same as if he had taken the identical money and handed it by his own hand to that other. *Commonwealth v. Mead,* 160 Mass. 319 (35 N. E. 1125) ; *Commonwealth v. Smith,* 129 Mass. 104; *Commonwealth v. Tuckerman,* 10 Gray 173; *Territory v. Meyer,* 3 Ariz. 199, 24 Pac. 183; *People v. Gallagher,* 100 Cal. 466 (35 Pac. 80) ; *State v. Palmer,* 40 Kan. 475 (20 Pac. 270) ; *Roberts v. People,* 9 Colo. 458 (13 Pac. 631) ; *Ex parte Ricord,* 11 Nev. 287 ; *People v. Civille,* 44 Hun. 497.' "

*State v. Krug,* 12 Wash. 288, 41 Pac. 126, is to the same effect.

These cases are typical and illustrate the principle that where, through the instrumentality of a warrant, check, draft or other order, possession of money is obtained, there is a taking, as much so as if money was had in the first instance. These cases do not sustain the contention that the mere delivery of warrants, not paid within the time laid in the indictment, is equivalent to the payment of money.

It follows from what we have said that the judgment must be reversed, and the case remanded to the superior court with direction to dismiss, and it is so ordered.

TOLMAN and MITCHELL, JJ., concur.

STEINERT, J. (concurring in the result)—I concur in the result, upon the ground that the grand jury was never impaneled according to law, and that the indictment should, therefore, have been quashed. My reasons for this position have already been sufficiently stated in *State v. Guthrie, ante* p. 464, 56 P. (2d) 160.

MILLARD, C. J., concurs with STEINERT, J.

HOLCOMB, J. (dissenting)—I concur in the decision by the majority as to the manner of impaneling the grand jury and the employment by the court of a special prosecutor to attend the sessions of the grand jury. I concurred in the decision of the case of *State v. Guthrie, ante* p. 464, 56 P. (2d) 160, thinking that decision correct in law and members of this court should not be hasty to waver too easily in important public matters.

The decision of the majority, however, is such a manifest miscarriage of justice to the tax paying public of Pierce county and the state that I am compelled to vigorously dissent therefrom.

I wish to add to what was said in the *Guthrie* case, *supra,* as to the matter of impaneling the grand jury, that there is no constitutional right in this state, as in many states, to be prosecuted by a grand jury.

Under Art. I, § 25, Washington constitution, offenses theretofore required to be prosecuted by indictment may be prosecuted by information or indictment as prescribed by law.

Art. I, § 26, *supra,* prescribes:

"No grand jury shall be drawn or summoned in any county, except the superior judge thereof shall so order."

From *In re Rafferty,* 1 Wash. 382, 25 Pac. 465, down to date, it has been the practice to prosecute chiefly by information rather than by indictment. There is no more potency in an indictment than in an information. Even were this court to hold that the grand jury was illegally impaneled after a verdict and judgment in the case, it would be our duty to order a sufficient information or indictment to be drawn, at the option of the prosecuting officers, and a retrial upon a sufficient charge. *State v. Burns,* 54 Wash. 113, 102 Pac. 886.

I also agree with the majority that the motion for a change of venue from Pierce county was correctly decided as not an abuse of discretion. See, also, *State v. Lindberg,* 125 Wash. 51, 215 Pac. 41, and *State v. Schafer,* 156 Wash. 240, 286 Pac. 833.

There was no erroneous instruction given in this case prejudicial to appellants, as was the case in *State v. Guthrie, supra.* In fact, there were no flagrant errors prejudicial to the rights of appellants justifying a reversal. All of the errors complained of involved matters of discretion for the trial court to decide.

The prevailing opinion is contrary to the principles announced in *State v. Krug,* 12 Wash. 288, 41 Pac. 126, *State v. Green,* 158 Wash. 574, 291 Pac. 728, and cases there cited, and to our own definitive statement of the law by Tolman, J., in the recent case of *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622. Some of the members who have signed the prevailing opinion thought it good law where we said:

"All governments pay in warrants; and the mere fact that a warrant, because of the depletion of the fund upon which it is drawn, is not at once reducible to money, makes it none the less the only means of paying public officers, employees and those who supply the daily needs of the state and its local subdivisions. Such a warrant is negotiable, in the commercial sense, at least, and those who must can usually obtain its present value in cash, or, if they think proper to hold it, receive interest upon it until it is redeemed."

Warrants are but symbols representing money the same as checks.

In this case the act of defrauding the county of its money consisted of several steps: (1) The delivery of the wood; (2) the filing of claims for more wood than delivered; (3) the issuance of warrants to the Pacific Fuel Company; (4) payment of the warrants. The jury was warranted in finding that by these means appellants had obtained from the county by false pretenses "lawful money of the United States." In the final analysis, that is what the Pacific Fuel Company got and what the county lost.

It is immaterial that some of the warrants were not *paid* during the period charged in the indictment, namely, between October 16, 1933, and October 1, 1934. But, conceding that it is material, there is still ample evidence to sustain the verdict. It will be noted that five warrants were paid September 13, 1934. It must be remembered that there was evidence to the effect that the delivery of "short loads" was a matter of daily occurrence. In fact, the jury were justified in believing that practically all loads were fifteen to thirty per cent "short." This being so (figuring fifteen per cent off on the wood for which the county was billed), the county paid *in money* $1,816.50 for 516 cords of wood, on the false representation that 607 cords had been delivered. In other words, the county was de-

570

frauded of much more than the minimum sum of twenty-five dollars in lawful money of the United States, constituting grand larceny, during the period defined in the indictment. This proof was sufficient to sustain the charge of grand larceny, as alleged. *State v. Liliopoulos,* 167 Wash. 686, 10 P. (2d) 564.

After an examination of all of the errors assigned by appellants, none of them are sufficient to justify reversal of the verdict and judgment, which should be affirmed.

MAIN, BLAKE, and BEALS, JJ., concur with HOLCOMB, J.