MARGARET SULLIVAN, *by George Sullivan, her Guardian ad Litem, Respondent,* v. ASSOCIATED DEALERS, *a Partnership, Appellant,* LAWRENCE RAMBERG, *Defendant.*[1]

[1]Reported in 103 P. (2d) 489.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*A. A. Seijas,* for respondent.

JEFFERS, J.—Respondent, Margaret Sullivan, by her guardian *ad litem,* George Sullivan, recovered judgment in the superior court against appellant, Associated Dealers, a partnership composed of F. H. Hawthorne and Russell Provine, and against Lawrence Ramberg, in the sum of five thousand dollars, based on a jury verdict, for personal injuries sustained in an automobile collision between a car in which she was riding and one belonging to appellant but being driven at the time by Lawrence Ramberg. The accident occurred at the intersection of Fifteenth avenue and east Marion street, in Seattle, on Sunday morning, May 1, 1938, at about one-fifteen a. m.

The complaint, in so far as material herein, alleged that, at the time of the accident, defendant Ramberg was operating the car and acting in the scope of, and in furtherance of, the business of Associated Dealers. The complaint also alleged certain acts of negligence on the part of Ramberg, which allegations of negligence and the testimony relative thereto are not material herein, in view of the fact that Ramberg made no appearance in the action, and this appeal by Associated Dealers raises no question as to the negligence of Ramberg.

The answer of Associated Dealers alleged affirmatively that, at the time of the accident, Ramberg was not operating the automobile on the business of appellant, and was not subject to its control.

At the close of all the testimony, a motion for a

directed verdict was made by appellant, which motion was denied, and after the return of the verdict, motions for judgment notwithstanding the verdict, or in the alternative for a new trial, were made and denied, and judgment was entered on the verdict, April 22, 1939. This appeal by Associated Dealers followed.

Appellant bases error on the refusal of the trial court to grant its motion for a directed verdict, and upon the court's refusal to grant its motion for judgment notwithstanding the verdict. Appellant also contends that the trial court erred in entering judgment against appellant on the verdict.

Forrest Hawthorne, a member of appellant partnership, was called as a witness by respondent, and admitted ownership of the car, and that Ramberg was in the employ of appellant as a car salesman. The witness further testified that Ramberg was working on commission, but received a guaranteed amount each month; that both the witness and Ramberg were members of the used car salesmen's union; that, under union rules, appellant was required to furnish its salesmen transportation twenty-four hours a day; that appellant had no control over Ramberg after nine o'clock at night, at which time appellant was required to close its place of business and used car lot; that it was the duty of salesmen to go out and contact prospects and demonstrate cars to them. In answer to a question by respondent's counsel as to what control he had over Ramberg, the witness answered:

"Well, I have complete control over him, other than after business hours. I have no control over him then. I can send him out on a call or designate where they should go to take a certain car or in any way at all. I have complete control over them, other than after hours I have no control."

The witness further testified that the union rules call for no activity after nine o'clock at night; that the salesmen are not supposed to demonstrate a car or even discuss a sale on Sunday; that, having no control over Ramberg after nine o'clock, he could not, of course, prevent him from talking to anyone about anything he pleased; that Ramberg left appellant's place of business on the Saturday night prior to the accident sometime after closing time, and that he did not know anything about what he did thereafter; that, as a part of his compensation, Ramberg had the right to the use of a car to drive back and forth to his home, and also to use the car for pleasure.

A. E. Duggins, a police officer, who arrived at the scene of the accident shortly after it happened, was called by respondent in her case in chief, and after describing what he observed, he was asked:

"Q. Now, did you have any conversation with the defendant Ramberg? A. Yes, I did. Q. Will you tell us what that conversation was?"

At this point, counsel for appellant objected, contending that any statement made by Ramberg at that time could not be testified to by the witness for the purpose of showing the relationship of agency between Ramberg and Associated Dealers. The court observed, "Oh, no. No, he can't prove his agency by his own statement. Oh, no." Counsel for respondent again asked the question, "What was said?" to which the witness replied:

"Well, we asked, of course, his name and address and so on, and his address was back north of this accident. We asked him where he was going. He said he was going to Chinatown. I asked him if he wasn't a little out of place, up around there, going to Chinatown. He said he had to pick up someone on the way down."

Counsel for appellant moved that the answer be stricken, and the court then ordered the following part of the answer stricken: "that he had to pick up somebody on the way down." Later, the same question was again put to the witness, and the answer was to the same effect as before. Counsel for appellant again moved that the answer be stricken, and it was ordered stricken, for the reason that it was not evidence against Associated Dealers.

Officer Charles Waite was then called by respondent, and he was asked if he had a conversation with Ramberg, and he answered that he did, whereupon counsel for appellant made the same objection as was made to the testimony of Officer Duggins, and the court sustained the objection.

Defendant Ramberg left appellant's employ sometime after the accident and now resides at Rudyard, Montana, where his deposition was taken. In his deposition, he testified in substance as follows: That he was in the employ of appellant as a salesman on May 1, 1938; that his hours on Saturday were from seven in the morning until nine at night; that he was driving the car involved in the accident, which occurred about one-fifteen a. m., Sunday, May 1, 1938; that, at the time of the accident, he was going to a Chinese restaurant for some food; that with him at the time, in the Pontiac coupe, were his wife, his sister, and his brother-in-law; that they had started from his apartment, filled up with gas at the Summit garage, and then driven down Olive way to Fifteenth; that they had intended to turn down Twelfth, but passed it, and therefore drove down Fifteenth; that Jim Cannon, his brother-in-law, paid for the gas; that he received a salary and commission; that he was allowed to drive cars of appellant on his own business, as part of his compensation; that he was not going out to sell a car on the night of the accident,

and at that time he was doing nothing in connection with the sale of cars for the appellant; that the trip to Chinatown was not on business, but merely pleasure. On cross-examination, he was asked if he intended to see a prospect on the night of the accident, and he answered that he did not.

The testimony of Ethel Ramberg, the nineteen-year-old sister of defendant Ramberg, whose deposition was taken at Rudyard, Montana, the testimony of Jim Cannon, brother-in-law of Ramberg, and the testimony of Mrs. Pauline Ramberg, wife of defendant Ramberg, was to the effect that Ramberg came home to the apartment where he lived about ten o'clock on the Saturday night before the accident; that they all sat around and talked until they decided they wanted something to eat and would go down to Chinatown to some Chinese restaurant. Ethel Ramberg further testified that she was sure her brother was not doing any work for appellant at the time of the accident. Jim Cannon, when asked by respondent's counsel whether or not Ramberg was going to sell a prospect or do any business for the Associated Dealers on this occasion, if he knew, answered "No." Mrs. Pauline Ramberg, when asked if her husband was out to do any work for Associated Dealers on this occasion, if she knew, answered, "I know he wasn't." There was no testimony that Ethel Ramberg or Jim Cannon had ever worked for or been connected in any way with appellant.

After appellant had rested, respondent again called Officer Duggins, and the officer was asked to state the conversation he had with Ramberg. Counsel for appellant objected. Counsel for respondent then stated that he had a right to impeach Ramberg by showing that he had made statements contrary to those made on the witness stand. Counsel for appellant thereupon stated that, if the testimony was admissible at all, it was only

for impeachment of the credibility, and not to show agency. The court stated:

"That is all. It is not admissible to show agency. He may show that he made a statement one time contrary to a statement made another time. That is all it is for. It is not admissible for the purpose of showing that he was the agent of these people."

The witness then answered that Ramberg said he was going to pick up a person on the road down, who was a prospective buyer for the car.

Officer Waite was again called by respondent, and asked to relate the conversation he had with Ramberg. Counsel for appellant objected, and the court made the same ruling that it had made in regard to the testimony of Officer Duggins. The witness then aswered:

"He said that he was demonstrating the car, that he was going to pick up a prospect and continue on to get some Chinese food."

On cross-examination, the witness stated that Ramberg said he had been demonstrating the car that evening, but did not say what time.

■ At the time the motion for judgment notwithstanding the verdict was argued, the trial court, as appears from the record, seemed to be of the opinion that agency had been admitted, and that the statements testified to by the officers were statements of an admitted agent. We are unable to follow the trial court in this conclusion. It is, of course, true that Mr. Hawthorne admitted ownership of the car, and that Ramberg was in appellant's employ. These facts being admitted, it will be presumed that, at the time of the accident, the car was being operated in and about the master's business. We have held so many times that it would seem to need no citation of authority, that this presumption is not evidence, and relates only to a rule of law as to which party shall first go forward and pro-

duce evidence to sustain the matter in issue; that it will serve in the place of evidence only until *prima facie* evidence has been adduced by the opposite party; and that the presumption should never be placed in the scale of evidence. See *Scarpelli v. Washington Water Power Co.*, 63 Wash. 18, 114 Pac. 870, and cases therein cited.

There was certainly nothing in the testimony of Mr. Hawthorne which could be construed as an admission that, at the time of the accident, Ramberg was acting within the scope of his employment, or was on business for appellant, or that appellant could or did have any control over the activities of Ramberg after nine o'clock, at which time his employment ceased. There is no testimony or inference from testimony that Ramberg ever demonstrated a car or procured or interviewed a prospect after nine o'clock, the closing time of appellant. It is true that Ramberg had the use of a car to drive back and forth to his home and for pleasure, and that he had a car in his possession practically at all times. However, under the undisputed testimony, his employment each day ended at nine o'clock, and after that he could go where he pleased and talk with whom he pleased, and appellant had no control over him.

We have, then, only the presumption to support the fact that, at the time of the accident, the car was being operated in the interest of appellant, unless the admissions testified to by the officers may be considered as substantive evidence, and not merely for impeachment purposes. While we think the claimed admissions were admitted only for impeachment purposes, yet if the court, at the time of the motion for judgment notwithstanding the verdict, considered them on the theory that, agency having been admitted, they were admissible, we think the court was in error. We are

of the opinion that, there being no *evidence* of agency, but only a presumption, the admissions of Ramberg could not be considered for the purpose of establishing agency at the time of the accident, which, of course, would be the effect of showing that he was on the business of appellant at that time. *Anning v. Rothschild & Co.,* 130 Wash. 232, 226 Pac. 1013. In the cited case, aside from the presumption, the only testimony offered by the respondents on the question of whether or not, at the time of the accident, the car was being operated on the master's business, was that of certain witnesses who were permitted to testify, over appellant's objection, that defendant Halloran, the driver of the car, had said, shortly after the accident, that he had been to Tacoma in the car on business for appellant. After stating that declarations of the alleged agent are not competent to establish the fact of agency and giving the reason for the rule, we further stated:

"This disclosure of the reason for the rule is a complete answer to any argument to the effect that it may be violated under the rule of *res gestae.* Clearly, if the supposed agent may not bind his principal until there be other *evidence* of the agency, in no event and under no conditions can a litigant be prejudiced by the introduction of the admissions of a third person until there be *evidence* of the authority of such person to bind him." (Italics ours.)

In the cited case, the trial court thought the admission should be admitted as part of the *res gestae.* We further stated:

"It follows, then, that this evidence, having been improperly admitted, should be now disregarded, and we have this question of whether or not the car was being operated for and on behalf of its owner, supported only by the presumption."

It is apparent, we think, in the cited case, that this court refused to consider the admission made by

Halloran, because there was no *evidence* tending to establish that, at the time of the accident, he was operating the car on the master's business, but only the presumption. Halloran was a party defendant, and the claimed admission was not against Halloran's interest. As to the unsatisfactory character of this class of evidence, see *Ludberg v. Barghoorn,* 73 Wash. 476, 131 Pac. 1165, and *Jones v. Harris,* 122 Wash. 69, 210 Pac. 22.

And so, in the instant case, we are of the opinion that the claimed admissions of Ramberg cannot be considered as tending to prove that, at the time of the accident, he was acting within the scope of his employment and on the business of appellant, and we are of the opinion that the admissions can only be considered for impeachment purposes.

Respondent cites *Kneff v. Sanford,* 63 Wash. 503, 115 Pac. 1040; *State v. Green,* 158 Wash. 574, 291 Pac. 728; *Steiner v. Royal Blue Cab Co.,* 172 Wash. 396, 20 P. (2d) 39; and *State v. Ashe,* 182 Wash. 598, 48 P. (2d) 213, to sustain her contention that the admissions of Ramberg were properly received in evidence.

In the *Kneff* case, *supra,* the accident occurred at a time when Boldman, the driver of the taxicab, was on duty, and while he was returning from taking a young lady from the Tacoma hotel to her home. The driver testified that he did not have permission to take this young woman home, and received no fare for the trip. It appeared, however, that appellant, the owner of the taxicab, admitted that at least on one occasion he caused two of the girls from the hotel to be taken to their homes.

In the *Green* case, *supra,* certain admissions of the appellant, made after his arrest, were offered in evidence and, over objection, admitted. In that case, we stated that in both civil and criminal cases, an admis-

sion against interest by a party to an action is admissible as evidence against him.

Aside from the fact that the admissions in the instant case were only made for impeachment purposes, and we think can be considered only for that purpose, the claimed admissions were not against Ramberg's interest. In fact, they were favorable to him, for, if considered, they would tend to make the appellant liable with him for the injury.

*State v. Ashe, supra,* lays down the same rule as announced in the *Green* case. The cited cases, including the *Steiner* case, which we have not discussed, are not applicable herein.

Against the presumption, in the instant case, we have the testimony of five witnesses, Mr. Hawthorne and the four who were riding in the car at the time of the accident. The testimony of Mr. Ramberg is undisputed that Ramberg's hours of employment ended at nine o'clock in the evening, and that appellant had no control over him after that time. In addition to his testimony, we have the testimony of three witnesses that, at the time of the accident, Ramberg was engaged in no work for appellant, but that the only purpose of the trip to Chinatown was to get something to eat. It is also undisputed that it was about one-fifteen Sunday morning, and that there were then four people riding in the coupe.

The trial court conceded that Mrs. Ramberg, Ethel Ramberg, and Jim Cannon were disinterested witnesses, and stated that the admissions of Ramberg could not be considered as substantive evidence of agency, but were substantive evidence of what an admitted agent was doing. The court was therefore of the opinion it was a question of fact, to be determined by the jury, as to whether or not Ramberg was, at the time of the accident, on the business of appellant; in

other words, whether or not he was going to pick up a prospect.

■ Respondent contends that all four of the witnesses last mentioned were interested witnesses. This contention is based purely upon relationship.

It would be difficult, if not impossible, to formulate any hard and fast rule as to who should, and who should not, be considered interested witnesses. We cannot think that relationship alone should be determinative of this matter, especially in a case such as the instant one, where the testimony of the witnesses was not to the interest of Ramberg.

In *Barach v. Island Empire Tel. & Tel. Co.*, 151 Wash. 279, 275 Pac. 713, we held that the driver of the truck involved in the accident was an interested witness, and that employees were likewise interested witnesses.

We also held, in *Feldtman v. Russak*, 141 Wash. 287, 251 Pac. 572, that one who was employed by the respondent at the time of the accident, but was not so employed at the time he testified, was a disinterested witness.

In *Savage v. Donovan*, 118 Wash. 692, 204 Pac. 805, we held the presumption that Johnson, the driver of the car, was within the scope of his employment or service for the Donovans was overcome by the testimony of Mr. Donovan and Johnson.

In *Trainor v. Interstate Const. Co.*, 187 Wash. 142, 60 P. (2d) 7, we held the presumption of due care was overcome and must give way to the testimony of Mrs. Hoyt, who was the wife of the deceased.

We might cite many other cases on this point, but from all the cases we gather that it is the rule that whether a witness is interested or disinterested must be determined by the court from the facts and circumstances in the particular case.

Admitting that Hawthorne and Ramberg, and even

Mrs. Ramberg, were interested witnesses, and conceding that the testimony of Ramberg was successfully impeached, we still have the uncontradicted testimony of Ethel Ramberg and Jim Cannon. While it is true we have held that the presumption is not overcome by the testimony of interested witnesses alone, we have never held that the court could not consider the undisputed and unimpeached testimony of interested witnesses, together with the testimony of disinterested witnesses and the physical facts, in passing upon a motion for a directed verdict.

After a careful consideration of all the facts in this case, we are of the opinion that the presumption disappears in the face of the undisputed testimony of Hawthorne, the uncontroverted testimony of the disinterested witnesses, and the undisputed physical facts. In other words, it seems to us that it was so conclusively shown, from the undisputed testimony of disinterested witnesses and the undisputed and corroborated testimony of Hawthorne, that, at the time of the accident, Ramberg was not acting within the scope of his employment and was not in any way furthering the interest of appellant, that the trial court should have so held as a matter of law, and granted appellant's motion for a directed verdict.

Respondent cites many cases to sustain her contention that there was sufficient conflict in the testimony herein to warrant the court in submitting the case to the jury. We cannot discuss all of them, but we will refer to some of the later cases.

In *Smith v. Eldridge Motors,* 199 Wash. 10, 90 P. (2d) 257, 93 P. (2d) 1120, we have the testimony of Ordner, the salesman, that at the time he asked for the car to make the trip on which the accident occurred, he said to appellant's sales manager, " 'I got a couple of people I want to see,' " and again, " 'I says, "Say, listen, I have

got a couple of people I want to see in the country tomorrow and I want a car to use." ' " From this and other testimony, it was held that the case presented a disputed question of fact, and the case was properly submitted to the jury.

In the case of *Murray v. Kauffman Buick Co.*, 197 Wash. 469, 85 P. (2d) 1061, it appears from evidence, in addition to the presumption, that Hartbauer, the driver of the car, took the car from the curb, under direction of his superior to drive it around the building and up the ramp, to have a new battery installed. This witness testified that, without permission, he took the car to drive home to lunch. There was a dispute in the testimony of respondent Buick Company as to where Hartbauer had been told to drive the car. At the time of the accident, Hartbauer was wearing a smock furnished by respondent, bearing its insignia. From these and other facts, we held the trial court was not warranted in deciding, as a matter of law, that respondent was entitled to a judgment in its favor.

In *McMullen v. Warren Motor Co.*, 174 Wash. 454, 25 P. (2d) 99, while it does not appear from the opinion just what the testimony was, the opinion states that, aside from the presumption, the testimony offered by respondent was sufficient to take the case to the jury. It also appears that appellant called three witnesses to overcome the presumption, one of whom was president of appellant corporation and was an interested witness; another, Rochester, was the driver of the car and also an interested witness; and while the third was a disinterested witness, he did not testify to any fact which would meet the presumption.

In *Elliott v. Roberts*, 141 Wash. 689, 252 Pac. 131, the evidence of respondent showed the right of the driver, Spangler, to use the car, and that it was used by him evenings, for the purpose of soliciting customers and

demonstrating for sales; that he made sales at night, and went directly from his home in the morning to sell prospective customers. It further appeared the accident took place about eight-thirty o'clock in the evening. There was evidence that, on the night of the accident, Spangler had driven a lady home, and after leaving that place, the accident occurred. There was also evidence that Spangler expected to sell this lady a car. No mention is made of the presumption in this case, but it was held the evidence was conflicting and therefore properly submitted to the jury.

We think a close analysis of the cited cases above set out, and the others not mentioned here, will show that they may be distinguished on the facts.

We conclude, therefore, that the trial court erred in not granting appellant's motion for a directed verdict.

The judgment is reversed, with directions to dismiss the action as to Associated Dealers.

BLAKE, C. J., BEALS, and STEINERT, JJ., concur.