*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CT-442

JAMES CUNNINGHAM, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CDC-12189-14)

(Hon. Elizabeth C. Wingo, Trial Judge)
(Hon. Harold L. Cushenberry, Jr., Reviewing Judge)

(Submitted October 31, 2017                 Decided August 20, 2020)

*Christopher A. Zampogna* was on the brief for appellant.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, *Rosalyn Calbert Groce*, Deputy Solicitor General, and *John D. Martorana*, Assistant Attorney General, were on the brief for appellee.

Before GLICKMAN, FISHER, and EASTERLY, *Associate Judges*.

FISHER, *Associate Judge*:   Appellant James Cunningham asserts that the Superior Court did not have subject matter jurisdiction over this prosecution for making a false report to the Metropolitan Police Department ("MPD") because he

made the report while located in Maryland. Appellant also argues that the evidence presented at trial was insufficient to support his conviction. We affirm.

## I. Factual and Procedural Background

Appellant Cunningham was employed by the District of Columbia Department of Youth and Rehabilitative Services ("DYRS") and worked as a youth development specialist at the New Beginnings detention facility. Although located in Laurel, Maryland, New Beginnings houses juveniles from the District of Columbia who have been committed to a secure facility.

While working at New Beginnings on June 8, 2014, appellant was left alone with several youths after his partner went to use the bathroom. He noticed two youths engaged in "horseplay" in a room that was off-limits. Appellant claims that when he ordered them to leave the room, one of the youths became angry and threatened to "glass [him] up," or assault him. As appellant walked away and radioed for help, the youth allegedly struck appellant from behind, with a closed fist, on the right side of his head. Appellant claims the blow caused him to fall to the floor and lose consciousness.

Once other New Beginnings employees arrived, appellant told them what had happened and asked for someone to call the police. A coworker then called the MPD. Appellant was initially taken to Patient First and then later to Laurel Regional Hospital where he sought treatment for a head injury.

Two MPD employees, Officer Bryant Tran and Detective Jeremy Bank, traveled from the District of Columbia to Laurel, Maryland, in response to the call from New Beginnings. Officer Tran spoke with appellant after he was taken to Patient First. Appellant told Officer Tran he was struck by the youth in the face and then fell to the floor unconscious.

Detective Bank interviewed appellant after appellant spoke with Officer Tran. Appellant told Detective Bank that the youth had threatened to "glass [him] up" and when appellant turned his back, the youth punched him in the head.[1] At trial, both Officer Tran and Detective Bank testified that they stood close to appellant while he made his report. However, neither of them saw any visible injury or other indication that the youth had hit appellant in the head.

---

[1] After talking with the officers, appellant prepared a DYRS Incident Notification Form in which he recounted the version of events summarized above for a third time. This form was admitted into evidence at trial.

While at New Beginnings, Officer Tran and Detective Bank viewed surveillance video of the area in which appellant claimed he was assaulted. The video depicted events that were contrary to what appellant told the police. At trial, the court viewed the video and noted that it showed one of the youths touch appellant on the shoulder. Officer Tran and Detective Bank testified that appellant then "threw" himself to the floor and lay there as if unconscious. The video never showed the youth strike appellant on the head. Officer Tran and Detective Bank returned to the District of Columbia after interviewing appellant, taking notes, and viewing the surveillance video. The next day, Detective Bank interviewed the youth who allegedly struck appellant.

The government later filed a criminal information charging appellant with making a false or fictitious report to the MPD in violation of D.C. Code § 5-117.05.[2] Before trial began, appellant filed a motion to dismiss for lack of subject matter jurisdiction. Because the allegedly false report and the assault itself both

---

[2] The Information alleged that appellant "did willfully or knowingly make or caused to be made, communicate or cause to be communicated, to the Metropolitan Police force, or to an officer or member thereof, a false or fictitious report of the commission of a criminal offense within the District of Columbia, or of any other matter or occurrence of which the Metropolitan Police force is required to receive reports, or in connection with which the Metropolitan Police force is required to conduct an investigation, in violation of D.C. Code § 5-117.05 (2001)."

occurred in Maryland, appellant argued that the Superior Court of the District of Columbia lacked subject matter jurisdiction over his prosecution.

On the first day of trial, September 2, 2015, the trial court denied appellant's motion to dismiss. It determined that, regardless of where the facility was located, the alleged assault by the youth would be a matter reported to, or investigated by, the MPD. Magistrate Judge Wingo also noted that this case involved District of Columbia employees as well as a District facility that houses District youth. The effects of appellant's actions were felt in the District of Columbia and the only logical place to vindicate the District's interests was in the District's courts. Judge Wingo determined that appellant's case was analogous to *Ford v. United States*, 616 A.2d 1245 (D.C. 1992), a decision we will discuss later.

After the parties presented their evidence, which included testimony from Officer Tran, Detective Bank, and appellant, the trial court found there was no dispute that appellant made a report of assault to the MPD. The only questions were whether the report was false and whether appellant made the report knowing it was false. The trial court determined that an assault was not committed when the youth touched appellant's shoulder and, even if the touch was an assault, it was not the same conduct appellant reported to the MPD. After "scour[ing] that video over

and over," the court found that there was "simply nothing in the video to suggest" appellant was ever punched in the head by the youth.[3]  The court found appellant guilty of making a false police report and sentenced him to pay a three-hundred-dollar fine.

On October 15, 2015, appellant filed a motion for review of the judgment, arguing for a second time that the trial court lacked subject matter jurisdiction and that the evidence was insufficient.  Judge Cushenberry found that the Superior Court had jurisdiction because appellant's act of reporting the incident to the MPD "demonstrate[d] that he knew at the time that MPD was clothed with the power to investigate the incident."  Appellant's false report also wasted District resources and, "had the juvenile been charged with any crime resulting from this incident, he would have been prosecuted in the District of Columbia, not Maryland."

Judge Cushenberry also found that the evidence at trial was sufficient to support appellant's conviction "and the credibility judgments made by the trial

---

[3]  The trial court also noted that, while the video shows appellant holding the left side of his face, he would not be holding the left side of his face had he been hit on the right side as he reported.  The medical records introduced by appellant did not "provide any additional support for his claim" because they were "just discharge instructions" and did not contain a "specific analysis by any medical officer."

court must remain undisturbed because they are not clearly erroneous." On April 18, 2016, he denied appellant's motion for review. Appellant filed a timely appeal.

## II. Subject Matter Jurisdiction

"Subject matter jurisdiction concerns the court's authority to adjudicate the type of controversy presented by the case under consideration." *In re J.W.*, 837 A.2d 40, 44 (D.C. 2003) (quoting *In re R.L.*, 590 A.2d 123, 128 (D.C. 1991)). "Like all questions of law, [this court] review[s] questions concerning the trial court's jurisdiction *de novo*." *Id.*

Appellant's jurisdictional attack rests on two arguments. First, he cites D.C. Code § 11-923(b)(1) (2012 Repl.), which states that "the Superior Court has jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia." Appellant claims that this court has interpreted D.C. Code § 11-923(b)(1) to "limit [the Superior Court's] jurisdiction to criminal violations taking place within the boundaries of the District."

Second, appellant claims that the Superior Court's adjudication of his case violated his constitutional rights. Article III, Section 2, Clause 3 of the United

States Constitution provides that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."  The Sixth Amendment to the Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed."  Appellant contends that these provisions of the Constitution were violated because he made the report to the MPD while in Maryland but was tried in the District of Columbia.

As interpreted by this court, D.C. Code § 11-923(b)(1) is "consistent with the requirements of [A]rticle III, [S]ection 2, [C]lause 3, and the [S]ixth [A]mendment to the United States Constitution that criminal offenses be prosecuted in the state or district in which they were committed." *United States v. Baish*, 460 A.2d 38, 40 (D.C. 1983).  This court has determined that a crime is committed and may be tried where any "integral component[]" of the offense occurs. *Id.* at 40, 43.  "The criminal act, the [motive] of the perpetrator, the cause, and the effect, are but parts of the complete transaction.  Wherever any part is done, that becomes the locality of the crime as much as where it may have

culminated."[4]  *Adair v. United States*, 391 A.2d 288, 290 (D.C. 1978) (quoting

*State v. Ashe*, 48 P.2d 213, 215 (Wash. 1935)).[5]

We reject appellant's arguments asserting a lack of subject matter jurisdiction.  In *United States v. Baish*, the government could not prove that the defendant was located within the District when she placed threatening telephone calls.  460 A.2d at 42–43.  However, "both the utterance and the communication of the threatening language [were] integral components of the offense of making threats to do bodily harm."  *Id.* at 43.  "Proof that either component occurred within the District establishe[d] a basis for prosecution in the Superior Court."  *Id.* This court determined that the Superior Court had jurisdiction because the threat

---

[4]  The actual quote from *Adair*, 391 A.2d at 290, contains the word "notice" in place of the word "motive."  However, *Adair* is quoting *Ashe*, 48 P.2d at 215, which uses the word "motive."  *Ashe* in turn quotes *Commonwealth v. Jones*, 82 S.W. 643, 645 (Ky. 1904), which also uses the word "motive."  Thus, it seems that *Adair* misquoted *Ashe* and the correct word to be used in the sentence is "motive" instead of "notice."

[5]  The Supreme Court has applied the relevant constitutional provisions in the same way, although they generally govern venue, not jurisdiction, in federal prosecutions.  *See United States v. Cabrales*, 524 U.S. 1, 6 (1998) (explaining that "[t]he Constitution twice safeguards the defendant's venue right").  In *United States v. Rodriguez-Moreno*, the Supreme Court confirmed that, under these constitutional provisions, an offense is "committed in all of the places that any part of it took place, and venue for [the offense] [is] appropriate in any of them."  526 U.S. 275, 282 (1999).  A court must "initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."  *Id.* at 279.

was communicated by telephone to someone located within the District of Columbia. *Id.*

We further explored when a crime has been committed "within the District of Columbia" in *Ford v. United States*. 616 A.2d at 1251. In *Ford*, the appellant claimed that there was no jurisdiction to prosecute him for obstruction of justice because his acts in bribing a witness, despite being carried out in order to influence his pending trial in this jurisdiction, had occurred entirely in Maryland. *Id.* at 1251–52. We explained that the Superior Court nonetheless had jurisdiction over the prosecution because "the 'gravamen' of the offense of obstruction of justice" is the attempt to influence a particular investigation or proceeding, and "Ford's conduct was intended to interfere with the integrity of the judicial process in the District of Columbia." 616 A.2d at 1252–53. The crime was thus committed within the District of Columbia under the meaning of D.C. Code § 11-923(b). *Ford* also "agree[d] entirely with the opinion in" a "mirror image" case decided in Maryland: *Pennington v. State*, 521 A.2d 1216 (Md. 1987).[6] *Pennington* reasoned that "where causing a particular result constitutes an element of the offense" and

---

[6] *Pennington* involved the same jurisdictional issue, but the jurisdictions were reversed; it addressed an obstruction of justice charge that arose from a stabbing that occurred within the District of Columbia, but was carried out "in order to dissuade [the stabbing victim] from testifying in an assault case then pending in Baltimore, Maryland." *Ford*, 616 A.2d at 1252.

when "the offense is against the State itself," the court "view[s] the gravamen of those crimes as being the injury to the State and . . . conclude[s] that jurisdiction exists where the offended agency of the State is located." 521 A.2d at 1219–22.

The logic of *Ford* and *Pennington* applies equally to this situation. To violate D.C. Code § 5-117.05, the defendant must knowingly "make or cause to be made . . . a false or fictitious report" to the MPD. As in those cases, "causing a particular result constitutes an element of the offense." *Pennington*, 521 A.2d at 1219. Appellant's communication of the false report to the MPD was thus committed in the District of Columbia because an integral component of the crime — causing the false report "to be made to" MPD — took place in this jurisdiction. *See also Baish*, 460 A.2d at 42–43 (because "communication of the threatening language" is an "integral component[] of the offense of making threats to do bodily harm," "if a threat is heard by someone within the District of Columbia, the speaker threatens with[in] the proscriptive ambit of § 22–507 — regardless of where [the defendant] utter[ed] the threatening words"). Consistent with both D.C. Code § 11-923(b)(1) and the United States Constitution, the Superior Court properly exercised jurisdiction over appellant's case.[7]

---

[7] We further note that, had an assault actually occurred, it could have been prosecuted within the District of Columbia. *See In re E.D.P.*, 573 A.2d 1307,

(continued…)

Appellant relies on *Strassheim v. Daily*, 221 U.S. 280 (1911), an extradition case, to argue that the District of Columbia did not have jurisdiction because he did not "intend" to produce "detrimental effects" here. *Strassheim* states that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect." 221 U.S. at 285. While appellant uses this language to press the idea that "intend[ing] to produce . . . detrimental effects" is a separate, independent requirement for a court to assert subject matter jurisdiction, we think that this argument assigns an unwarranted restrictive gloss to *Strassheim's* words. The quoted sentence in *Strassheim* is descriptive, rather than prescriptive, and simply explains that the facts in that case were *sufficient* to convey jurisdiction. We see no support for the proposition that our court, as well as the Supreme Court, has failed to understand, for more than a century, that some form of

---

(…continued)
1308–09 (D.C. 1990) (juvenile prosecuted in Superior Court for assaulting security officer at juvenile detention facility run by the District of Columbia but located in Maryland; holding that District of Columbia "trial judge properly denied appellant's motion to dismiss [] petition for lack of jurisdiction"); *In re A.S.W.*, 391 A.2d 1385, 1389–91 (D.C. 1978) (determining that the Superior Court has jurisdiction over assaults on employees of District "juvenile facilities taking place outside, as well as inside, the District"). It would be inconsistent to then require that a false report of such an assault — a false report that was made to MPD because of its jurisdiction over the reported crime — be prosecuted elsewhere.

intent is *necessary* for there to be jurisdiction.[8]  We conclude that, although an underlying crime may involve a certain mental state — which naturally will be discussed[9] when determining where the crime was actually committed — that does not then mean that there is a second, independent requirement of "intent" to produce "detrimental effects" in the District of Columbia that would serve as a prerequisite to our courts asserting jurisdiction.

## III.  Sufficiency of the Evidence

When reviewing claims that the evidence at trial was insufficient, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements

---

[8]  Though the federal cases discussing venue are not strictly analogous, they support the same proposition, as they focus on the conduct constituting the crime, rather than the defendant's intentions.  *See, e.g.*, *Rodriguez-Moreno*, 526 U.S. at 279 (emphasizing that "[a]s we confirmed just last Term, the '*locus delicti* of the charged offense must be determined from the nature of the crime alleged and the location of the **act or acts constituting it**.'  In performing this inquiry, a court must initially identify the **conduct** constituting the offense (the nature of the crime) and then discern the location of **the commission of the criminal acts**.") (quoting *Cabrales*, 541 U.S. at 6–7) (emphasis added).

[9]  Our cases certainly mention the defendant's "intent" at times.  *See, e.g.*, *Ford*, 616 A.2d at 1253 (noting that "Ford's conduct was intended to interfere with the integrity of the judicial process in the District of Columbia").  However, the cases do so in the context of discussing what the integral components of particular offenses are and determining where those elements occurred.

of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence need not compel a finding of guilt beyond a reasonable doubt or negate every possible inference of innocence. *See Collins v. United States*, 73 A.3d 974, 985 (D.C. 2013). "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." *Kruse v. District of Columbia*, 171 A.2d 752, 753 (D.C. 1961). After reviewing the trial record, we conclude the evidence is sufficient to sustain appellant's conviction.

Appellant first argues that the government did not prove that he "knowingly" communicated false information to the MPD. *See Barrie v. United States*, 887 A.2d 29, 32 (D.C. 2005) ("D.C. Code § 5-117.05 makes it a crime to give false information to the police knowing that information to be false.") "Knowingly means that [appellant] acted voluntarily and on purpose, not by mistake or accident." *Jones v. United States*, 813 A.2d 220, 224–25 (D.C. 2002). "[T]he law permits a court to find [appellant's] knowledge of the falsity based on reasonable inferences from concrete facts in evidence." *Willgoos v. United States*, 228 A.2d 635, 636 (D.C. 1967) (parentheses omitted).

The government presented concrete facts from which a reasonable fact finder could infer appellant knowingly made a false report to the MPD. First, surveillance video contradicted appellant's claim that the youth struck him with a closed fist on the right side of the head. The video revealed that the youth touched appellant on the shoulder and that appellant then fell to the floor and lay there as if unconscious. Contrary to his report, appellant was never struck in the head. The trial court also noted that the video showed appellant holding the left side of his face, but he would not have been holding that side of his face had he been hit on the right side as he reported.

Officer Tran and Detective Bank both testified that they stood close to appellant while he made his report. However, neither observed any physical injury or other indication that the youth hit appellant in the head. Though appellant claims his medical records prove he suffered a head injury and corroborate his testimony, the trial court noted that the records were not persuasive because they were general discharge instructions that did not include a medical professional's analysis.[10] Thus, a reasonable fact finder could infer from the government's evidence that appellant knowingly filed a false police report.

---

[10] Appellant also argues that Officer Tran's handwritten notes, which read "swelling," corroborated appellant's testimony that he was hit in the head.

(continued…)

Appellant also complains that the trial court did not give "any weight" to his consistent testimony and the other evidence he offered at trial. However, the trial judge clearly considered appellant's evidence and testimony but determined that she "did not find the report credible and the testimony credible from the defendant." "It is the role of the trial court to assess the credibility of witnesses, and this court will not reverse a credibility finding unless it is clearly erroneous or lacking evidentiary support." *Bolanos v. United States*, 938 A.2d 672, 685 (D.C. 2007). Appellant has not met this standard.

Appellant next contends that the evidence showed he was indeed assaulted — that the youth committed either attempted-battery or intent-to-frighten assault when he touched appellant's shoulder. *See McGee v. United States*, 533 A.2d 1268, 1270 (D.C. 1987) (explaining the two different types of assault). But, as the trial court noted, even if the touch on the shoulder technically was an assault, this was not the event reported by appellant.

---

(…continued)
However, at trial, Officer Tran testified that he did not remember why he wrote down the word "swelling."

Appellant perhaps asserts that the evidence was insufficient to prove that the underlying assault was a "matter or occurrence" of which the MPD was "required to receive reports" or "conduct an investigation." However, appellant has forfeited this argument for two reasons. First, he did not present it to the associate judge reviewing the magistrate judge's decision. *See Bradley v. District of Columbia*, 107 A.3d 586, 593 (D.C. 2015) (noting that "absent extraordinary circumstances, a defendant ordinarily must present in his [motion for review] all the issues to be raised [on appeal] or else forego their consideration later by this court") (internal quotation marks omitted). Second, this argument is presented too perfunctorily to warrant our consideration. *See, e.g.*, *McFarland v. George Washington Univ.*, 935 A.2d 337, 351 (D.C. 2007) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Appellant mentions this argument within a single sentence on appeal. In addition, that sentence is located in appellant's jurisdictional argument and never clearly presented as an argument contesting sufficiency of the evidence. Thus, appellant has forfeited this argument.[11] In sum, we hold that the evidence presented at trial was sufficient to support appellant's conviction.[12]

---

[11]　Appellant never urged the trial court to acquit him on this basis. However, the trier of fact was aware that attacks that occur on correctional officers in the District's juvenile facilities are punishable under D.C. Code § 22-405, and the offense may be tried in the Superior Court, even if the assault did not occur at a

(continued…)

## IV. Conclusion

The judgment of the Superior Court is hereby affirmed.

---

(…continued)

facility within the geographical bounds of the District. *In re A.S.W.*, 391 A.2d at 1390. She also had learned during the discussions about jurisdiction that the Mayor has designated MPD to provide assistance "to protect life and property" at youth facilities "located on property titled in the United States located outside of the District of Columbia." Mayor's Order 88-58 (March 15, 1988).

[12] Appellant briefly argues that the court erred in denying his motion to dismiss and proceeding to trial without first making a finding of probable cause. This argument is also presented in too perfunctory a fashion to warrant consideration. In any event, even if appellant was entitled to a pretrial determination of probable cause, *see generally Gerstein v. Pugh*, 420 U.S. 103 (1975), any error is rendered harmless by the court's finding of guilt beyond a reasonable doubt. *See Williams v. United States*, 75 A.3d 217, 222 n.12 (D.C. 2013) ("In effect, a finding of guilt beyond a reasonable doubt negates any doubt that there was probable cause of guilt."). Appellant may also be asserting (again in a perfunctory manner) that the information, quoted in note 2, failed to state an offense. However, the information charged appellant using the language of D.C. Code § 5-117.05, and was sufficient to make appellant fully aware of the charges against him. *See, e.g.*, *United States v. Miqueli*, 349 A.2d 472, 474–75 (D.C. 1975) (informations charging offenses in statutory language were "sufficiently definite to apprise the defendants of the nature of the accusations against them" and "[n]othing more by way of pleading evidentiary facts was necessary").